UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, individually and as an assignee
and subrogee of Mechanical Dynamics & Analysis,
LLC, and LEXINGTON INSURANCE COMPANY,
individually and as an assignee and subrogee of
Mechanical Dynamics & Analysis, LLC,

Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY,

Defendant.

Case No. 07-CV-11073(WHP)
ECF CASE

---

# AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Lexington Insurance Company ("Lexington"), individually and as assignees and subrogees of Mechanical Dynamics & Analysis, LLC ("MD&A"), through their attorneys, Hodgson Russ LLP, for their amended complaint against defendant Continental Casualty Company ("Continental"), allege:

## NATURE OF ACTION

1.      This insurance-coverage action arises out of an underlying action against MD&A, a professional-services firm, entitled *Arizona Public Service Company, et al. v. Mechanical Dynamics & Analysis, LLC*, Case No. 2005-CV-005740, Arizona Superior Court, Maricopa County (the "Underlying Action"), which MD&A's insurers have settled on its behalf.

2.     Lexington—MD&A's primary, general-liability insurer—defended MD&A and contributed its entire, $1,000,000 policy limit to the settlement of the Underlying Action. But Continental—MD&A's primary, professional-liability insurer—failed to defend MD&A and failed to contribute its entire, $5,000,000 policy limit to the settlement. Indeed, Continental contributed only $1,000,000 of its limit to the settlement, leaving a $4,000,000 gap.

3.     So to protect MD&A's interests, National Union—MD&A's final-tier, umbrella insurer, whose policy applies only after the exhaustion of the Lexington and Continental primary policies—was forced to contribute $6,500,000 to the settlement, $4,000,000 of which was rightfully the responsibility of Continental.

4.     As a result of Continental's failure to defend MD&A in the Underlying Action, Lexington seeks a judicial declaration that (i) under principles of indemnification and subrogation, Continental must reimburse Lexington for all defense costs it paid on MD&A's behalf; (ii) alternatively, and under principles of contribution, Continental must reimburse Lexington for its *pro rata* share of the defense costs Lexington paid on MD&A's behalf; (iii) Lexington's payment of MD&A's defense costs has unjustly enriched Continental; (iv) Continental breached its contractual duty to defend MD&A; and (v) Continental breached its duty of good faith to MD&A and Lexington.

5.     Moreover, as a result of Continental's failure to contribute its entire, $5,000,000 policy limit to the settlement of the Underlying Action, National Union seeks a judicial declaration that (i) the National Union umbrella policy does not apply unless and until MD&A or its underlying insurers satisfy the "retained limit" under the policy; (ii) under principles of indemnification and subrogation, Continental must reimburse National Union

$4,000,000 for the settlement of the Underlying Action; (iii) National Union's contribution to the settlement of the Underlying Action has unjustly enriched Continental; (iv) Continental breached its contractual duty to indemnify MD&A up to its limit of liability; and (v) Continental breached its duty of good faith to MD&A and National Union.

### PARTIES & JURISDICTION

6.      Lexington is a Delaware corporation with its principal place of business in Boston, Massachusetts.

7.      National Union is a Pennsylvania corporation with its principal place of business in New York, New York.

8.      Upon information and belief, Continental is an Illinois corporation with its principal place of business in Chicago, Illinois.

9.      This Court has subject-matter jurisdiction under 28 U.S.C. section 1332(a)(2) because the parties are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

10.      Venue in this District is proper under 28 U.S.C. sections 1391(a) and (c).

11.      This Court has personal jurisdiction over Continental because it is doing business in New York.

12.      This Court has personal jurisdiction over Continental because it transacts business in New York, and the plaintiffs' claims against Continental arise out of its transaction of business in New York.

FACTS

**The Lexington Policy**

      13.     Lexington issued Commercial General Liability Policy No. 0153837 (the

"Lexington Policy") to MD&A for the period of December 31, 2002 to December 31, 2003. The

Lexington Policy has a limit of $1,000,000 for each occurrence. A copy of the Lexington Policy

is attached as **Exhibit A**.

      14.     Under the Lexington Policy, Lexington agreed to pay all sums that

MD&A becomes legally obligated to pay as damages because of "property damage" caused by

an "occurrence." Ex. A, Form LX7003 § I.A.1.a-b.

      15.     But section IV, "Other Insurance," provides:

      4.     Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.     Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b.     Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1)     That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work" . . . .

*       *       *

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against

- 4 -

that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)   The total of all deductible and self-insured amounts under all that other insurance.

\*       \*       \*

c.   Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

*Id.* §§ IV.4.a-c.

16.   Section V, "Definitions," provides:

\*       \*       \*

19.   "Your work" means:

a.   Work or operations performed by you or on your behalf; and

b.   Materials, parts or equipment furnished in connection with such work or operations.

\*       \*       \*

*Id.* § V.19.a-b.

17.    Based upon Continental's refusal to defend MD&A in the Underlying Action, Lexington defended MD&A subject to a complete reservation of its rights.

**The Continental Policy**

18.    Continental issued Professional Liability Architects/Engineers Policy MCE 11-397-39-67 (the "Continental Policy") to MD&A, a professional turbine- and generator-services firm, for the period of August 1, 2003 to August 1, 2004.  A copy of the Continental Policy is attached as **Exhibit B**.

19.    The Continental Policy has a limit of $5,000,000 for each occurrence subject to a $250,000 self-insured retention.  Ex. B, Declarations, ¶¶ 5, 6.

20.    Under the Continental Policy, Continental agreed to pay all amounts in excess of the self-insured retention up to its limit of liability for which MD&A becomes legally obligated to pay as a result of a "wrongful act" happening anywhere in the world.  *Id.* Form G126985-A31 § I.A.

21.    The Continental Policy defines a  "wrongful act" as a "negligent act, error or omission in the performance of professional services for others by [MD&A]."  *Id.* § II.

22.    The Continental Policy defines "professional services" as "those services that [MD&A is] . . . legally qualified to perform for others in [its] . . . practice as an architect, engineer, land surveyor, landscape architect, construction manager, or as specifically defined by endorsement to this policy."  *Id.*

23.    Endorsement 5 to the Continental Policy amends the definition of "professional services" to include "those services which you are legally qualified to perform for

others in your practice of:  Balancing, Testing, and Management/Consulting." *Id.* Endorsement
5.

24.    Moreover, the Continental Policy requires Continental to "defend any
claim made against [MD&A] seeking amounts that are payable under the terms of [the] policy,
even if any of the allegations of the claim are groundless, false or fraudulent." *Id.* Form
G126985-A31 § 1.C.

25.    By letter dated August 9, 2005, Continental appears to have acknowledged
its duty to defend and indemnify MD&A in the Underlying Action for any claim covered by the
Continental Policy.  A copy of Continental's August 9, 2005 letter to MD&A is attached as
**Exhibit C**.

26.    Nevertheless, Continental failed to defend MD&A in the Underlying
Action, nor has it reimbursed Lexington for any costs incurred to defend MD&A.

**The National Union Umbrella Policy**

27.    National Union issued Commercial Umbrella Policy No. 1399693 to
MD&A (the "National Union Umbrella Policy") for the policy period of December 31, 2002 to
December 31, 2003.  A copy of the National Union Umbrella Policy is attached as **Exhibit D**.

28.    The National Union Umbrella Policy has a limit of $9,000,000 for each
occurrence excess of the "retained limit." Ex. D, Declarations, Item 3.

29.    Section I of the National Union Umbrella Policy, "Coverage," provides:

> We will pay on behalf of the Insured those sums in excess
> of the Retained Limit that the Insured becomes legally
> obligated to pay by reason of liability imposed by law or

assumed by the Insured under an Insured Contract because of . . . Property Damage . . . that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

*Id.* Form 57691 § I.

30.    Section II of the National Union Umbrella Policy, "Defense," provides:

A.    We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when:

1.    The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies; or

2.    Damages are sought for . . . Property Damage . . . covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured . . . .

*Id.* § II.

31.    Section III.E. of the National Union Umbrella Policy, "Retained Limit,"

provides:

We will be liable only for that portion of damages in excess of the Insured's Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance *and the applicable limits of any other underlying insurance providing coverage to the Insured*; or

2.    The amount stated in the Declarations as Self Insured Retention as a result of any one Occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the Insured;

- 8 -

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

*Id.* § III.E. (emphasis added).

32.    Section IV of the National Union Umbrella Policy sets forth the following

definitions:

\*      \*      \*

F.    Insured Contract means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for . . . Property Damage . . . to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*      \*      \*

H.    Occurrence means:

1.    As respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be considered as arising our of one Occurrence[.]

\*      \*      \*

K.    Property Damage means:

1.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the Occurrence that caused it.

*Id.* §§ IV.F., H., K.

- 9 -

**The Underlying Accident and Action**

33.     On or about April 7, 2005, Arizona Public Service Company ("APS") and its insurers, as subrogees of APS, commenced the Underlying Action against MD&A.  A copy of the complaint in the Underlying Action is attached as **Exhibit E.**

34.     In its complaint, APS alleged that it entered into a contract with MD&A to inspect a generator at one of its power plants.

35.     During the inspection, MD&A determined that the generator's bottom stator bar had failed certain tests and, therefore, required repairs.

36.     By change order dated April 17, 2003, APS retained MD&A to repair the generator.

37.     After MD&A completed its repair work, the generator failed.

38.     As a result, the generator sustained extensive damage, and APS was forced to shut it down for 111 days.

39.     During the shut-down period, APS was allegedly required to procure "substitute" power.

40.     APS also claimed that it lost profits as a result of the shut-down.

41.     APS asserted the following five causes of action against MD&A:  (1) strict liability; (2) negligence; (3) breach of contract; (4) breach of express warranty; and (5) breach of implied warranty.

42.    APS sought compensatory damages of at least $12,500,000—$10,500,000 in excess of the combined limits of the Lexington and Continental Policies—plus interest, attorneys' fees, and costs.

43.    The parties to the Underlying Action reached an $8,500,000 settlement.

44.    Lexington contributed its entire $1,000,000 policy limit to the settlement.

45.    Continental had the contractual duty to pay its entire $5,000,000 limit to the settlement, which it did not do.

46.    Instead, Continental contributed only $1,000,000 toward the settlement.

47.    National Union's duty to indemnify MD&A in the Underlying Action was not implicated because Continental failed to pay its entire policy limit to settle the Underlying Action and, therefore, MD&A's "retained limit" under the National Union Umbrella Policy was not exhausted.

48.    Nonetheless, in good faith and for the protection of MD&A, National Union agreed to contribute $6,500,000 of its limit to the settlement—$4,000,000 of which was rightfully the obligation of Continental.

49.    National Union's contribution was subject to a complete reservation of its rights under the National Union Umbrella Policy and applicable law. *Id.*

50.    Since the underlying settlement, MD&A has agreed to assign to Lexington and National Union all of its right, title, and interest in and to:

  a.    payment under the Continental Policy for the claims asserted in the Underlying Action including, but not

limited to, MD&A's right to a defense, indemnification, or reimbursement of defense and indemnity costs; and

b.    any claim MD&A may have against Continental arising out of Continental's refusal to (i) defend the Underlying Action or (ii) pay its entire policy limit in settlement of the Underlying Action.

### FIRST CLAIM
(Lexington—Indemnification From Continental)

51.    The plaintiffs repeat the allegations in paragraphs 1 through 50.

52.    The Continental Policy covers the claims against MD&A in the Underlying Action.

53.    As a result, Continental had a contractual duty to defend MD&A in the Underlying Action.

54.    Despite its duty to defend, Continental failed to defend MD&A.

55.    At most, the Lexington Policy was excess to the Continental Policy and, therefore, Continental, and not Lexington, had the duty to defend MD&A in the Underlying Action.

56.    Nevertheless, in a good-faith effort to protect MD&A's interests, Lexington, paid defense costs on behalf of MD&A in the Underlying Action.

57.    In doing so, Lexington paid defense costs for which Continental alone was liable under the Continental Policy.

58.     There is a justiciable controversy regarding the rights and duties of the parties as to the defense costs incurred in the Underlying Action.

59.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. section 2201 (the "DJA"), Lexington is entitled to a judgment declaring the rights and duties of the parties and, in particular, that Continental must indemnify Lexington for the defense costs it paid on MD&A's behalf in the Underlying Action, plus interest, costs, and disbursements.

## SECOND CLAIM
(Lexington—Subrogation Against Continental)

60.     The plaintiffs repeat the allegations in paragraphs 1 through 59.

61.     Under the Continental Policy, Continental was legally required to defend MD&A in the Underlying Action.

62.     At most, the Lexington Policy was excess to the Continental Policy and, therefore, Continental, and not Lexington, had the duty to defend MD&A in the Underlying Action.

63.     Nevertheless, in good faith and for the protection of MD&A, Lexington paid defense costs on behalf of MD&A in the Underlying Action.

64.     MD&A has an existing, assignable claim against Continental, which MD&A could have asserted for its own benefit if Lexington had not already paid for its defense in the Underlying Action.

65.     As a result of Continental's failure to defend MD&A, Lexington has suffered damages.

66.     There is a justiciable controversy as to whether justice requires that the costs Lexington incurred to defend MD&A should be shifted entirely to Continental.

67.     Pursuant to the DJA, Lexington, as an assignee and subrogee of MD&A, is entitled to a judgment declaring the rights and duties of the parties and, in particular, that Continental must reimburse it for the defense costs it paid in the Underlying Action, plus interest, costs, and disbursements.

### THIRD CLAIM
(Lexington—Contribution from Continental)

68.     The plaintiffs repeat the allegations in paragraphs 1 through 67.

69.     Both Lexington and Continental had the duty to defend MD&A in the Underlying Action.

70.     Nevertheless, Lexington paid MD&A's defense costs without any contribution from Continental.

71.     The defense costs Lexington paid were equally and concurrently owed by Continental.

72.     There is a justiciable controversy as to whether Lexington has paid more than its fair share of MD&A's defense costs.

73.     Pursuant to the DJA, Lexington is entitled to a judgment declaring the rights and duties of the parties and, in particular, that Continental must pay its *pro rata* share of the defense costs incurred in the Underlying Action, plus interest, costs, and disbursements.

## FOURTH CLAIM
(Lexington—Unjust Enrichment Against Continental)

74.    The plaintiffs repeat the allegations in paragraphs 1 through 73.

75.    Lexington's payment of MD&A's defense costs in the Underlying Action conferred a benefit upon Continental at Lexington's expense.

76.    Since Continental was contractually obligated to pay all or part of MD&A's defense costs, it would be unjust to allow Continental to keep the benefit Lexington has conferred upon it.

77.    Lexington is, therefore, entitled to reimbursement from Continental for defense costs paid in the Underlying Action, plus interest, costs, and disbursements.

## FIFTH CLAIM
(Lexington—Breach of Contract Against Continental)

78.    The plaintiffs repeat the allegations in paragraphs 1 through 77.

79.    Continental's failure to defend MD&A in the Underlying Action constitutes a breach of the Continental Policy.

80.    As an assignee of MD&A's rights under the Continental Policy, Lexington is entitled to damages sufficient to compensate it for Continental's breach, plus interest, costs, and disbursements.

## SIXTH CLAIM
(Lexington—Bad Faith Against Continental)

81.    The plaintiffs repeat the allegations in paragraphs 1 through 80.

82. Continental owes MD&A fiduciary duties of good faith, fair dealing, and honest discretion.

83. Continental had no reasonable basis on which to refuse to defend MD&A in the Underlying Action.

84. Continental's refusal to defend MD&A is, therefore, unreasonable and constitutes a gross disregard of MD&A's interests.

85. Continental's refusal to defend MD&A constitutes an intentional or reckless failure to place the interests of MD&A on an equal footing with its own interests.

86. As a result, Continental has breached its duty of good faith to MD&A.

87. Accordingly, and as an assignee of MD&A's rights, Lexington is entitled to compensatory and punitive damages in an amount sufficient to compensate it for Continental's breach, plus interest, costs, and disbursements.

## SEVENTH CLAIM
(National Union—Necessity for Exhaustion of Retained Limit)

88. The plaintiffs repeat the allegations in paragraphs 1 through 87.

89. The National Union Policy does not apply, and National Union is not liable for any sum MD&A becomes legally obligated to pay, unless and until MD&A or its underlying insurers satisfy the "retained limit" under the National Union Umbrella Policy.

90. Specifically, section III.E.1 of the National Union Umbrella Policy defines "retained limit" as "[t]he *total* of the applicable limits of the underlying policies listed in the

Schedule of Underlying Insurance *and* the applicable limits of *any other underlying insurance providing coverage*" to MD&A.  Ex. C, Form 57697 § III.E.1 (emphasis added).

91.    The Lexington Policy is listed in the National Union Umbrella Policy's Schedule of Underlying Insurance.

92.    Therefore, the $1,000,000 limit of the Lexington Policy is included in the retained limit.

93.    The Continental Policy constitutes "other underlying insurance providing coverage" to MD&A.

94.    Therefore, the $5,000,000 limit of the Continental Policy is included in the retained limit.

95.    Accordingly, the retained limit is $6,000,000, and National Union is not liable for any settlement in the Underlying Action unless and until this limit is exhausted.

96.    There is a justiciable controversy as to whether the limit of the Continental Policy is included in the retained limit under the National Union Umbrella Policy.

97.    Pursuant to the DJA, National Union is entitled to a judgment declaring the rights and duties of the parties and, in particular, declaring that (i) the retained limit under the National Union Umbrella Policy includes the $1,000,000 limit of the Lexington Policy and the $5,000,000 limit of the Continental Policy, and (ii) National Union has no duty to provide a defense or indemnification for the Underlying Action unless and until the retained limit is exhausted.

## EIGHTH CLAIM
(National Union—Indemnification Against Continental)

98.    The plaintiffs repeat the allegations in paragraphs 1 through 97.

99.    The Continental Policy covers the claims asserted against MD&A in the Underlying Action.

100.    As a result, Continental had a contractual duty to pay its entire $5,000,000 limit to settle the Underlying Action.

101.    Despite its contractual obligation, Continental contributed only $1,000,000 to the settlement.

102.    In good faith, National Union paid $4,000,000 for the protection of MD&A, which $4,000,000 was rightfully the obligation of Continental.

103.    There is a justiciable controversy regarding the rights and duties of the parties as to the payments made to settle the Underlying Action.

104.    Pursuant to the DJA, National Union is entitled to a judgment declaring the rights and duties of the parties and, in particular, that Continental must indemnify National Union for $4,000,000 it contributed to the settlement of the Underlying Action, plus interest, costs, and disbursements.

## NINTH CLAIM
(National Union—Subrogation Against Continental)

105.    The plaintiffs repeat the allegations in paragraphs 1 through 104.

106.    Continental was legally obligated under the Continental Policy to fully indemnify MD&A up to its $5,000,000 policy limit to settle the Underlying Action.

107.    Continental refused to pay its entire policy limit to settle the Underlying Action and, instead, only contributed $1,000,000.

108.    The National Union Policy is excess to the Continental Policy, and therefore, National Union had no duty to indemnify MD&A in the Underlying Action unless and until the entire, $5,000,000 limit of the Continental Policy was exhausted.

109.    Nevertheless, in good faith and for the protection of MD&A, National Union contributed $6,500,000 to the settlement in the Underlying Action—$4,000,000 of which was rightfully the obligation of Continental.

110.    MD&A has an existing, assignable claim against Continental, which MD&A could have asserted for its own benefit if National Union had not already indemnified it for the $4,000,000 that was rightfully the obligation of Continental.

111.    As a result of Continental's refusal to contribute its entire policy limit to the settlement of the Underlying Action, National Union has suffered $4,000,000 in damages.

112.    There is a justiciable controversy as to whether Continental's refusal to contribute its policy limit to settle the Underlying Action affected National Union's indemnification responsibilities under the National Union Policy.

113.    Pursuant to the DJA, National Union, as an assignee and subrogee of MD&A, is entitled to a judgment declaring the rights and duties of the parties and, in particular,

that Continental must reimburse National Union for $4,000,000 of the indemnification costs it paid to settle the Underlying Action, plus interest, costs, and disbursements.

### TENTH CLAIM
(National Union—Unjust Enrichment Against Continental)

114. The plaintiffs repeat the allegations in paragraphs 1 through 113.

115. National Union's payment of $6,500,000 toward the settlement of the Underlying Action—$4,000,000 of which was rightfully Continental's responsibility—conferred a benefit upon Continental at National Union's expense.

116. Since Continental was contractually obligated to contribute its entire $5,000,000 policy limit to the settlement, it would be unjust to allow Continental to keep the $4,000,000 benefit National Union has conferred upon it.

117. National Union is, therefore, entitled to reimbursement from Continental in the sum of $4,000,000, plus interest, costs, and disbursements.

### ELEVENTH CLAIM
(National Union—Breach of Contract Against Continental)

118. The plaintiffs repeat the allegation in paragraphs 1 through 117.

119. Continental's failure to pay its entire, $5,000,000 policy limit to settle the Underlying action constitutes a breach of the Continental Policy.

120. As an assignee of MD&A's rights under the Continental Policy, National Union is entitled to damages in the sum of $4,000,000 to compensate it for Continental's breach, plus interest, costs, and disbursements.

121.    As an assignee of MD&A's rights under the Continental Policy, National Union is entitled to damages in the sum of $4,000,000 to compensate it for Continental's breach, plus interest, costs, and disbursements.

### TWELFTH CLAIM
(National Union—Bad Faith Against Continental)

122.    The plaintiffs repeat the allegations in paragraphs 1 through 121.

123.    Continental owes MD&A fiduciary duties of good faith, fair dealing, and honest discretion.

124.    Continental had no reasonable basis on which to refuse to contribute its entire policy limit to the settlement of the Underlying Action.

125.    Continental's refusal to contribute its entire policy limit is, therefore, unreasonable and constitutes a gross disregard of MD&A's interests.

126.    Continental's refusal to contribute its entire policy limit constitutes an intentional or reckless failure to place the interests of MD&A on an equal footing with its own interests.

127.    As a result, Continental has breached its duty of good faith to MD&A.

128.    Accordingly, and as an assignee of MD&A's rights, National Union is entitled to compensatory damages in the sum of $4,000,000 to compensate it for Continental's breach, plus punitive damages, interest, costs, and disbursements.

WHEREFORE, the plaintiffs request the following relief:

a.  On the first claim, a judgment declaring that Continental must indemnify Lexington for the defense costs it paid on MD&A's behalf in the Underlying Action, plus interest, costs, and disbursements;

b.  On the second claim, a judgment declaring that Continental must reimburse Lexington, as an assignee and subrogee of MD&A, for the defense costs it paid on MD&A's behalf in the Underlying Action, plus interest, costs, and disbursements;

c.  On the third claim, a judgment declaring that, at the very least, Continental must pay its *pro rata* share of the defense costs Lexington incurred in the Underlying Action, plus interest, costs, and disbursements;

d.  On the fourth claim, reimbursement from Continental for defense costs paid in the Underlying Action, plus interest, costs, and disbursements;

e.  On the fifth claim, an award to Lexington, as an assignee of MD&A's rights under the Continental Policy, of damages sufficient to compensate it for Continental's breach, plus interest, costs, and disbursements;

f.  On the sixth claim, compensatory and punitive damages in an amount sufficient to compensate Lexington, as an assignee of MD&A's rights, for Continental's breach of its duty of good faith;

g.  On the seventh claim, a judgment declaring that (i) MD&A's retained limit under the National Union Umbrella Policy includes the $1,000,000 limit of the Lexington Policy and the $5,000,000 limit of the Continental Policy, and (ii) National Union has no duty to provide a defense or indemnification for the Underlying Action unless and until the retained limit is exhausted;

h.  On the eighth claim, a judgment declaring that Continental must indemnify National Union for $4,000,000 of the indemnification costs it paid to settle the Underlying Action, plus interest, costs, and disbursements;

i.  On the ninth claim, a judgment declaring that Continental must reimburse National Union, as an assignee and subrogee of MD&A, for $4,000,000 of the indemnification costs it paid to settle the Underlying Action, plus interest, costs, and disbursements;

j.  On the tenth claim, reimbursement from Continental in the sum of $4,000,000, plus interest, costs, and disbursements;

k.  On the eleventh claim, an award to National Union, as an assignee of MD&A's rights under the Continental Policy, of damages in the

sum of $4,000,000 to compensate it for Continental's breach, plus interest, costs, and disbursements;

l.    On the twelfth claim, compensatory and punitive damages in an amount sufficient to compensate National Union, as an assignee of MD&A's rights, for Continental's breach of its duty of good faith; and

m.    Interest, costs, disbursements, reasonable attorneys' fees as allowed by law, and such other and further relief as the Court deems proper.

Dated: April 2, 2008

**HODGSON RUSS** LLP
*Attorneys for Plaintiffs*

Patrick M. Tomovic (PT4030)
Kevin D. Szczepanski (KS1599)
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

The Lincoln Building
60 East 42nd Street, 37th Floor
New York, New York 10165-0150
(212) 661-3535

- 23 -

EXHIBIT A

**LEXINGTON INSURANCE COMPANY**

**WILMINGTON, DELAWARE**

Administrative Offices - 200 State Street, Boston, Massachusetts 02109

### COMMERCIAL GENERAL LIABILITY DECLARATIONS

POLICY NO: 0153837

RENEWAL NO.: 1536

NAMED INSURED:  MECHANICAL DYNAMICS & ANALYSIS, LLC

133 MAPLE AVENUE

SCOTIA                          NY      12302

POLICY PERIOD:   From:   12/31/02   To:   12/31/03
(12:01 A.M. Standard Time at your mailing address shown above)

*EXCESS LINE ASSOCIATION ELANY RECORDED MAR 2 4 2003 OF NEW YORK*

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Pro-Comp Operations) | $2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $1,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |
| EACH OCCURRENCE LIMIT | $1,000,000 |
| FIRE DAMAGE LIMIT | $50,000   Any One Fire |
| MEDICAL EXPENSE LIMIT | $EXCLUDED |

[X] DEDUCTIBLE:                     $     5,000 per OCCURRENCE

[ ] SELF INSURED RETENTION      $            aggregate

Forms of Business:    [ ]Individual    [ ]Partnership    [ ]Joint Venture [X] Organization (Other Than Partnership or Joint Venture)

BUSINESS DESCRIPTION:  CONSULTING ENGINEERS, MACHINE SHOPS, MILLWRIGHT – TURBINE & GENERATOR INSTALLATION & REPAIR

| CLASSIFICATION | PREMIUM BASIS | RATE | ADVANCE PREMIUM |
|---|---|---|---|
| | SEE SCHEDULE OR COMPOSITE RATE ENDORSEMENT | | |

Total Advance Premium For This Policy:
Minimum Annual Premium For This Policy:        $340,120
Minimum Earned Premium For This Policy:        $85,030

ENDORSEMENTS ATTACHED TO THIS POLICY:  AS PER SCHEDULE

"THIS INSURANCE POLICY IS WRITTEN BY AN INSURER(S) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND NOT PROTECTED IN THE EVENT OF THE INSOLVENCY OF THE INSURER BY THE NEW YORK STATE SECURITY FUND. THIS POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THIS INSURANCE DEPARTMENT PERTAINING TO POLICY FORMS."

AUTHORIZED REPRESENTATIVE OR
Countersignature (in states where applicable)

OCC-SGL (07/97)
LX9101

# FORMS SCHEDULE

Named Insured: MECHANICAL DYNAMICS & ANALYSIS, LLC

Policy No: 0153837

Effective Date: 12/31/2002

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| LX9101 | 07/97 | | GENERAL LIABILITY OCCURRENCE |
| LX7003 | 01/96 | | CGL COVERAGE FORM/OCC |
| LEXOCC098 | 03/86 | ENDT#01 | CROSS SUITS ENDORSEMENT |
| LEXOCC271 | 03/92 | ENDT#02 | EMPLOY-RELATED PRACTICES EXCL |
| LEXCME077 | 03/86 | ENDT#03 | MINIMUM EARNED PREMIUM |
| LEXOCC262 | 06/91 | ENDT#04 | SECURITIES/FINANCIAL INT EXCL. |
| LX9319 | 09/99 | ENDT#05 | PRIOR & PENDING LITIGATION EXL |
| LX7055 | 01/96 | ENDT#06 | A&E PROF LIAB EXCL CG2243 |
| LX7149 | 08/85 | ENDT#07 | ASBESTOS EXCL |
| LX5160 | 06/89 | ENDT#08 | CALCULATION OF PREMIUM IL0003 |
| LX5167 | 11/85 | ENDT#09 | COMMON POLICY CONDITIONS |
| LX7082 | 01/96 | ENDT#10 | CONTRACTORS PL EXCL CG2279 |
| LX5191 | 10/93 | ENDT#11 | COVERAGE C/MED PAY EXL CG2135 |
| LX7102 | 01/96 | ENDT#12 | DEDUCTIBLE LIAB INS CG0300 |
| LX9125 | 07/97 | ENDT#13 | GL SCHEDULE OF RATES/PREMIUM |
| LX7100 | 02/02 | ENDT#14 | IL 00 21 NUCLEAR ENERGY EXCL |
| LX7150 | 05/87 | ENDT#15 | RADIOACTIVE MATTER EXCL |
| LX7032 | 01/96 | ENDT#16 | TOTAL POLLUTION EXCL CG2149 |
| LX7127 | 10/93 | ENDT#17 | WAIVER TRANSFER RIGHTS CG2404 |
| | | ENDT#18 | FUNGUS EXCLUSION |
| | | ENDT#19 | BLANKET ADDITIONAL INSURED |
| | | ENDT#20 | MONTROSE ENDORSEMENT |
| | | ENDT#21 | 100% MINIMUM & DEPOSIT |
| | | ENDT#22 | SERVICE OF SUIT ENDT |

DOC018(Ed.12/87)
LX0285

# FORMS SCHEDULE

Named Insured:   MECHANICAL DYNAMICS & ANALYSIS, LLC

Policy No: 0153837

Effective Date:   12/31/2002

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| | | ENDT#23 | LAND SUBSIDENCE EXCL· |
| | | ENDT#24 | PER PROJECT AGGREGATE |

DOC018(Ed.12/87)

# ENDORSEMENT

This endorsement, effective 12:01 AM 01/06/2003

Forms a part of policy no.: 1141722

Issued to:

By: LEXINGTON INSURANCE COMPANY

## MINIMUM EARNED PREMIUM

It is understood and agreed that in the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of          $26,299.

It is further agreed that the provision regarding cancellation by the Insured is amended to read:

"If the Insured cancels this policy, earned premium will be computed in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater".

Authorized Representative OR
Countersignature (in states where applicable)

## ENDORSEMENT

**This endorsement, effective 12:01 AM 01/06/2003**

**Forms a part of policy no.:**

**Issued to:**     ---

**By: LEXINGTON INSURANCE COMPANY**

### SECURITIES AND FINANCIAL INTEREST EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury or damage in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase or sale, or the depreciation or decline in price or value, of any security, debt, bank deposit, or financial interest or instrument.

*[signature]*
_____
**Authorized Representative OR
Countersignature (in states where applicable)**

LEXOCC262(Ed.06/91)

POLICY NUMBER: 1141722          ENDORSEMENT                 COMMERCIAL GENERAL LIABILITY
                                                            CG 21 49 01 96

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is replaced by the following:

This insurance does not apply to:

**f. Pollution**

  (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

  (2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

ENDORSEMENT # 0003

This endorsement, effective 12:01 AM 12/01/97

Forms a part of policy no.: 5351958

Issued to: TRIPLE A MACHINE SHOP, INC

By: LEXINGTON INSURANCE COMPANY

### EMPLOYMENT-RELATED PRACTICES EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of the Insured's employees and/or Discrimination involving the Insured's employees and/or Sexual Harassment of the Insured's employees.

The following definitions apply to the foregoing:

Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

Discrimination means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy or natural origin.

Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

**Authorized Representative OR**
**Countersignature (in states where applicable)**

LEXOCC271(Ed. 03/92) *Archive Copy*

POLICY NUMBER: 1140665 ___ ENDORSEMENT                    IL 00 21 11 94

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
~TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

IL 00 21 11 94          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 2   □
LX7100

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1994

IL 00 21 11 94    □

## ENDORSEMENT

This endorsement, effective 12:01 AM 10/01/2001

Forms a part of policy no.:

Issued to: :

By: LEXINGTON INSURANCE COMPANY

### RADIOACTIVE MATTER EXCLUSION

This policy does not apply to:

"Bodily Injury" or "Property Damage" arising from the actual, alleged or threatened exposure of person(s) or property to any radioactive matter.

---

Authorized Representative OR
Countersignature (In states where applicable)

45782 (5/87)
LX7150

ENDORSEMENT

This endorsement, effective 12:01 AM 10/01/2001

Forms a part of policy no.:

Issued to:

By: LEXINGTON INSURANCE COMPANY

### CROSS SUITS ENDORSEMENT

It is agreed that the coverage afforded by this policy does not apply to a claim for damages arising out of Personal Injury or Property Damage, as defined, initiated, alleged, or caused to be brought about by a Named Insured or Additional Named Insured covered by this policy against any other Named Insured or Additional Named Insured covered by this policy.

_____
Authorized Representative OR
Countersignature (in states where applicable)

LEXOCC098(Ed.03/86)
LX0284

Sep-13-05   09:13am   From-AIGVS-L                    213-689-3533          T-977  P.025/040  F-586

POLICY NUMBER:  1140665    ENDORSEMENT                COMMERCIAL GENERAL LIABILITY
                                                      CG 03 00 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible PER CLAIM  or  PER OCCURRENCE | |
|---|---|---|
| Bodily Injury Liability OR | $ | $ |
| Property Damage Liability OR | $ | $ |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

CG 03 00 01 96          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 2   □
LX7102

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

 Copyright, Insurance Services Office, Inc., 1994 CG 03 00 01 96  □
LX7102

AVID INSURANCE AGENCY, INC.
425 NEW KARNER ROAD
ALBANY, NEW YORK 12205
(518) 869-8106
(518) 869-8525 FAX

November 14, 2003

Lexington Insurance Company
Administrative Offices
200 State Street
Boston, MA 02109

Attn:  Claims Department

Re:  Mechanical Dynamics & Analysis, LLC
     Policy No: 0153837
     Notice of Occurrence

       On August 5, 2003 our insured, Mechanical Dynamics & Analysis, LLC, was
notified by Cholla Power Plant that there was a problem with a generator some time after
our insured was in the plant.  The company did not have an indication at that time if this
actually had anything to do with MD&A, LLC but were notifying them of the situation.

       MD&A, LLC recommended a complete rewind of the generator and the company
chose to do a partial rewind.  The representatives for Cholla Unit III are looking into the
problem further to attempt to determine what actually happened to the unit.  Our insured
wished to have us report this situation to the insurance company although they have no
reason to believe that it will become a claim.    If this were to escalate to a claim rather
than just notification of an occurrence, the damage amount would be between $400,000-
500,000.

       Please accept this as only a notice of occurrence and notification that there is no
indication of a claim against our insured at this time. Thank you.

                         Sincerely,

                         AVID INSURANCE AGENCY, INC.


                         Roger Saddlemire

RCS/tls

POLICY NUMBER: 1140085

COMMERCIAL GENERAL LIABILITY
CG 00 01 01 96

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS — COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1994

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96
LX7003

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

Copyright, Insurance Services Office, Inc., 1994       CG 00 01 01 96   ☐
LX7003

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

     Copyright, Insurance Services Office, Inc., 1994     CG 00 01 01 96     □
LX7003

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

CG 00 01 01 96
LX7003

Copyright, Insurance Services Office, Inc., 1994

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994



c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.



**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96
LX7003

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  b. You have failed to fulfill the terms of a contract or agreement;

  if such property can be restored to use by:

  a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

  b. Your fulfilling the terms of the contract or agreement

8. "Insured contract" means:

  a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  b. A sidetrack agreement;

  c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  e. An elevator maintenance agreement;

  f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

  Paragraph f. does not include that part of any contract or agreement:

  (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

  a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";



b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

LX7003

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you have acquired; and

   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   b. The providing of or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

EXHIBIT B

**CNA**
*for All the Commitments You Make®*

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

DECLARATIONS ADDENDUM

| AGENCY BRANCH | PREFIX | POLICY NUMBER |
|---|---|---|
| 056125  969 | MCE | 11-397-39-67 |

INSURANCE IS PROVIDED BY
CONTINENTAL CASUALTY COMPANY,
CNA PLAZA, CHICAGO, IL 60685,
HEREIN CALLED WE, US, OR OUR.

1. NAMED INSURED

Mechanical Dynamics & Analysis, LLC

2. POLICY TERM    08/01/03    TO:    08/01/04    at 12:01 A.M.
Standard time at your address shown below

3. ADDRESS

P. O. Box 1235
Schenectady, New York 12301

4. INCEPTION DATE
08/01/96 is the effective date of the first policy issued
and continuously renewed by us.

IMPORTANT NOTICE

DURING THE FIRST SEVERAL YEARS OF THE CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES.  SUBSTANTIAL ANNUAL PREMIUM INCREASES CAN BE EXPECTED, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.

UPON TERMINATON OF COVERAGE, FOR ANY REASON, A 60 DAY AUTOMATIC EXTENDED REPORTING PERIOD WILL APPLY. IF THE POLICY HAS BEEN TERMINATED FOR REASONS OTHER THAN NON-PAYMENT OF PREMIUM OR FRAUD, DURING THE FIRST YEAR OF COVERAGE, WITHIN 30 DAYS AFTER TERMINATION OF COVERAGE, WE WILL GIVE WRITTEN NOTICE TO YOU THAT THE AUTOMATIC EXTENDED REPORTING PERIOD APPLIES, AND WILL ALSO INCLUDE THE IMPORTANCE OF PURCHASING ADDITIONAL EXTENDED REPORTING PERIOD COVERAGE FOR A TOTAL OF THREE YEARS, TOGETHER WITH THE PREMIUM FOR SUCH ADDITIONAL COVERAGE. THE PREMIUM FOR SUCH COVERAGE WILL BE BASED UPON THE RATES FOR SUCH COVERAGE ON THE DATE THE POLICY WAS ISSUED OR LAST RENEWED.

NO COVERAGE WILL EXIST AFTER THE TERMINATION OF SUCH EXTENDED REPORTING PERIOD, RESULTING IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER INSURER.

G-22548-B31
(ED. 01/99)

**CNA**
*For All the Commitments You Make®*

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

### DECLARATIONS

| AGENCY BRANCH | PREFIX | POLICY NUMBER | INSURANCE IS PROVIDED BY CONTINENTAL CASUALTY COMPANY, CNA PLAZA, CHICAGO, IL 60685, HEREIN CALLED WE, US, OR OUR. |
|---|---|---|---|
| 056125   969 | MCE | 11-397-39-67 | |

### NOTICE

THIS PROFESSIONAL LIABILITY POLICY IS WRITTEN ON A CLAIMS-MADE BASIS AND PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, SITUATIONS OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE PRIOR TO THE EFFECTIVE DATE OR INCEPTION DATE, WHICHEVER IS EARLIER, STATED ON THE DECLARATIONS.  THIS POLICY COVERS ONLY CLAIMS ACTUALLY MADE AGAINST YOU WHILE THE POLICY REMAINS IN EFFECT, OR DURING ANY APPLICABLE EXTENDED REPORTING PERIOD.  ALL COVERAGE PROVIDED BY THE POLICY CEASES UPON TERMINATION OF THE POLICY.  YOU THEN WILL BE GRANTED AN AUTOMATIC 60 DAY EXTENDED REPORTING PERIOD AND THE OPTION OF PURCHASING ADDITIONAL EXTENDED REPORTING PERIOD COVERAGE.  PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS WITH YOUR AGENT.

**1. NAMED INSURED**

MECHANICAL DYNAMICS &
   ANALYSIS, LLC
MECHANICAL DYNAMICS & ANALYSIS, LLC
MD&A, LLC
MECHANICAL DYNAMICS & ANALYSIS, INC.
AIRPLANS POWER ENGINEERING, INC.
MECHANICAL DYNAMICS & ANALYSIS, TBR
MECHANICAL DYNAMICS & ANALYSIS
   STEAMPATH, ATLANTA
MECHANICAL DYNAMICS & ANALYSIS
   . GENERATOR

**2. POLICY TERM      08/01/03      TO;      08/01/04      at 12:01 A.M.**
Standard time at your address shown below

**3. ADDRESS**

P. O. Box 1235
Schenectady, New York 12301

133 Maple Avenue
Scotia, New York 12302

139205                     Countersigned By Authorized Representative

G-22548-B31
(ED. 01/99)                        ~1 ~

**CNA**
*'r All the Commitments You Make®*

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

DECLARATIONS CONTINUED
Policy MCE 11-397-39-67  Effective  08/01/03

---

**4. INCEPTION DATE**
   08/01/96 is the effective date of the first policy issued
   and continuously renewed by us.

---

**5. SELF-INSURED RETENTION**
   a.  $     250,000 Purchased Self-Insured Retention
   b.  $           0 Self-Insured Retention Credit
   c.  $     250,000 is Self-Insured Retention per claim

---

**6. LIMIT OF LIABILITY:**
   a. $  5,000,000 per claim per policy term limit of liability
   b. $  5,000,000 aggregate limit of liability per policy term

---

**7. CANCELLATION**

   Notice will be given to you in accordance with the
   State of New York cancellation and non-renewal requirements.

---

**8. $   12,700,000 Total Billings**

---

**9. EXTENDED CLAIM REPORTING PERIOD COVERAGE**
   If this policy is terminated on the next anniversary date, the premium
   for the 3 year Extended Reporting Period Coverage will be 1.50 of the
   last annual policy premium charged on the date the policy was issued or
   renewed.

---

**10.  N/A   is the date after which joint ventures formed by you are**
        not covered.

---

**11. PREMIUM**                          **12.  INSTALLMENT PREMIUM PAYMENT**
   $     220,628 Standard
                                            $    88,252.00 Due  08/01/03
   $     220,628 Total                      $    66,188.00 Due  11/01/03
                                            $    66,188.00 Due  02/01/04

---

**13. Except as disclosed to us in the application for this policy:**

   A.    No claim such as would be covered by this policy has been made
         against any of you.
   B.    During the past five (5) years, no insurer has cancelled any
         similar insurance issued to you.
   C.    You, and/or your predecessor(s) in business, has/have no
         knowledge of any wrongful act that could be the basis for
         claim under this policy.

---

j 139205                    Countersigned By Authorized Representative

G-22548-B31                        -1A-
(ED. 01/99)

**CNA**
*for All the Commitments You Make®*

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

DECLARATIONS CONTINUED
Policy MCE 11-397-39-67    Effective    08/01/03

---

14.  Endorsements attached at inception

| | |
|---|---|
| 1-115687-A31 | State Provisions Endorsement |
| G-22565-B | Amendatory Endorsement Pollution Exclusion |
| G-87522-B31 | Policyholder Acknowledgement |
| G-144872-A | Coverage of and Cap on Losses for Certified Acts |
| 1-16177-B | Professional Services Endorsement |
| G-126985-A31 | Professional Liability Policy |

---

15.  If, prior to the beginning of the policy term stated earlier, we have adopted revised provisions for this policy in order to afford, without additional premium, broader insurance to the types of professionals covered by this policy, the insurance afforded for the policy term stated herein shall be construed in accordance with the provisions of such revisions.

---

16.  If, subsequent to the issuance of this policy, we revise the coverage afforded under the policy, we at next anniversary, will substitute the current policy form.

139205

Countersigned By Authorized Representative

G-22548-B31
(ED. 01/99)

-1B-

 **CNA**
¡All the Commitments You Make®

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67   Effective 08/01/03     Endorsement Number  1

### STATE PROVISIONS ENDORSEMENT

A.  Cancellation

This policy can be cancelled by either the first of you named or us.

1.  The first of you named can cancel this policy at any time. To do so, you must return the policy to us or any of our authorized representatives, or mail a written notice to us stating when the cancellation is to be effective. We must receive the policy or written notice before the cancellation date.

2.  We can cancel this policy by giving written notice to you at least 15 days, if cancellation is for non-payment of premium. You may continue the coverage by payment in full at any time prior to the date the cancellation is effective;  30 days, if cancellation is for any other reason before the date the cancellation is effective.

3.  We will mail or deliver notice to the first of you named at the last mailing address known to us, and to your authorized agent or broker.

4.  Notice of cancellation will state the date the cancellation is effective. The policy will end on that date. The grounds for such cancellation shall also be stated, and upon your written request, we shall furnish the facts upon which the cancellation is based.

5.  If notice is mailed, proof of mailing will be sufficient proof of notice. A copy shall also be mailed to your agent.

6.  If this policy is cancelled, we will send the first of you named any premium refund due. If we cancel, the refund will be pro-rata. If you cancel, the refund may be less than pro-rata. The cancellation will be effective even if we have not made or offered a refund.

139205

1-115687-A31                     PAGE  1
(Ed. 08/95)

**CNA**
*"All the Commitments You Make"*

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67  Effective 8/1/03          Endorsement Number    1

ENDORSEMENT CONTINUED

7.  If this policy has been in effect for more than 60 days
    or is a renewal policy, we shall not terminate this policy
    except for the occurrence of one or more of the following
    conditions:

    a.  non-payment of premium, unless cured within the
        15 day notice or grace period;

    b.  you or someone acting on your behalf is convicted
        of a crime arising out of acts that increase the
        hazards insured against;

    c.  if any fraud or material misrepresentation on your
        part is discovered in obtaining the policy or in
        presenting a claim;

    d.  if any act, omission or violation of a policy
        condition on your part, taking place after policy
        issuance or renewal, is discovered that substantially
        and materially increases the hazards insured against;

    e.  if there are any material physical changes in the
        property or material changes in the nature and
        extent of the risk, within your control that take
        place after policy issuance or renewal and result in
        uninsurability;

    f.  if the Superintendent of Insurance determines that
        continuation of the present premium volume would
        jeopardize our solvency or injure the interests of
        policyholders or the public, or continuing the
        policy would violate the Insurance Law;

    g.  if there is reasonable basis to believe that you
        intend to destroy the insured property in order to
        collect the insurance proceeds, provided that you
        are notified of the right to seek a ruling on this
        basis from the Superintendent; or

    h.  if your license, required for the practice of your
        profession, has been subjected to suspension or
        revocation.

! 139205

1-115687-A31                    PAGE  2
(Ed. 08/95)

**CNA**
*"All the Commitments You Make"*

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67  Effective 8/1/03    :    Endorsement Number    1

ENDORSEMENT CONTINUED

    B.   Non-Renewal

        If we decide not to renew this policy, at least 60 days but
        not more than 120 days advance written notice shall be mailed
        or delivered to the first of you named at the address shown
        in this policy, and to your authorized agent or broker.
        The notice shall include the reason for such non-renewal.

        This provision shall not apply in the event of non-payment of
        premium, or you have requested or agreed to non-renewal or
        insured elsewhere or accepted replacement coverage.

    C.   Conditional Renewal or Increased Premium

        If we condition renewal of this policy upon:

           1.   change of limits;
           2.   change in type of coverage;
           3.   reduction of coverage;
           4.   increased self-insured retention;
           5.   addition of exclusion; or
           6.   increased premiums in excess of 10%, exclusive of any
               premium increase due to and commensurate with insured
               value added, or as a result of experience rating,
               loss rating, retrospective rating or audit;

        at least 60 days but not more than 120 days advance written
        notice of such change shall be mailed or delivered to the first
        of you named at the address shown in this policy. A copy
        shall also be mailed to your agent or broker. Such notice
        will advise that a second notice shall be mailed or delivered
        at a later date indicating:

           1.   the specific reason or reasons for conditional renewal;
           2.   the amount of any premium increase; and
           3.   describe in plain and concise terms the nature of any
               other proposed changes; and
           4.   that coverage shall continue on the same terms,
               conditions and rates as the expiring policy, except
               that the annual aggregate limit of liability of the
               policy shall be increased in proportion to any such
               policy extension;

139205

1-115687-A31           PAGE   3
(Ed. 08/95)

**CNA**
*r All the Commitments You Make®*

PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67   Effective 8/1/03      Endorsement Number   1

ENDORSEMENT CONTINUED

until the later of the expiration date or 60 days after the
second notice is mailed or delivered.

All other provisions of this policy remain unchanged.

139205

Countersigned By Authorized Representative

1-115687-A31
(Ed. 08/95)              PAGE   4

RX DATE/TIME  :MAR.-25'04'(THU) 11:06                                    P. 010



PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67    Effective 08/01/03    Endorsement Number    2

### AMENDATORY ENDORSEMENT
### POLLUTION EXCLUSION

We agree with you that Section III., Exclusions, is amended to
include the following additional exclusion:

pollution claims resulting from:

1.  the actual or alleged generation, transportation,
    storage or disposal of pollutants by you, or your
    arranging for the transportation, storage or disposal
    of pollutants;

2.  pollution at, onto or from property or facilities
    which are or were at any time owned or rented by you.

This exclusion does not apply to claim or claim expenses
resulting from a wrongful act in connection with waste
water treatment systems; potable water systems; storm
water treatment systems; electrical systems; or heating,
ventilating or air conditioning systems.

For the purpose of this endorsement, the following additional
definitions apply:

Pollutants means any solid, liquid, gaseous or thermal
irritant or contaminant, including smoke, vapor, soot,
fumes, acids, alkalis, chemicals and waste. Waste includes
materials to be recycled, reconditioned or reclaimed.
Pollutants does not mean heat, smoke, vapor, soot or fumes
from a hostile fire or explosion.

Pollution means the actual, alleged or threatened discharge,
dispersal, seepage, migration, release  or escape of pollutants.

Storm water means runoff resulting from precipitation.

Hostile fire means one that becomes uncontrollable or
breaks out from where it was intended to be.

All other provisions of this policy remain unchanged.

. 139205                          _____
                                 Countersigned By Authorized Representative

G-22565-B
(Ed. 01/98)

RX DATE/TIME  :MAR.-25'04(THU) 11:06                                        P. 011



PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67    Effective 08/01/03        Endorsement Number    3

## POLICYHOLDER ACKNOWLEDGEMENT

In accordance with the State of New York Insurance Regulations, I hereby acknowledge and understand:

That this policy is written on a claims-made basis and that during the first several years of the claims-made relationship, claims-made rates are comparatively lower than occurrence rates. I understand that substantial annual premium increases can be expected, independent of overall rate level increases until the claims-made relationship reaches maturity.

That this policy provides no coverage for claims arising out of incidents, situations or alleged wrongful acts which took place prior to the earlier of the effective date, or prior acts date, if any, stated on the Declarations of this policy.

That this policy covers only claims actually made against me while the policy remains in effect or during any applicable extended reporting period. All coverage provided by this policy ceases upon termination of the policy.

If a claim is made against me, I will be provided the right to consent to the company's choice of defense attorney, which consent shall not be unreasonably withheld; participate in and assist in the direction of the defense of any claim; and consent in any settlement, which consent shall not be unreasonably withheld.

Having been granted this right, I understand that claim and claim expenses are included within the applicable limit of liability, and are subject to the application of the self-insured retention and coinsurance amount. Claim expenses will be applied to, and unless otherwise provided in the policy, act as a reduction of such limits of liability. This could result in such limit of liability becoming completely exhausted, in which case no further coverage is provided by this policy. The company will provide an accounting of claim expenses actually expended that are applied against either the self-insured retention or coinsurance amount or to reduce the limit of liability upon receipt of my written request.

I further understand that upon termination of coverage, a 60 day automatic extended reporting period will be granted at no

.139205

G-87522-B31                    PAGE  1
(Ed. 08/95)



PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67  Effective 8/1/03        Endorsement Number   3

ENDORSEMENT CONTINUED

additional charge.  Provided this policy has been terminated for
reasons other than non-payment of premium or fraud during the first
year of coverage, I will be able to purchase an additional three or
five year extended reporting period extension.  Within 30 days after
termination of coverage, the company will give written notification
to me that the automatic extended reporting period applies, and
such notice will also include the importance of purchasing additional
extended reporting period coverage together with the premium for
such additional coverage.  The premium for such coverage will be
based upon the rates for such coverage on the date the policy was
issued or last renewed.

I further understand that no coverage will exist after the termination
of such extended reporting period, resulting in a potential gap
in coverage if prior acts coverage is not subsequently provided by
another insurer.

I shall have the greater of 60 days from the effective date of
termination of coverage or 30 days from the date of mailing or
delivery of the notice mentioned above to submit written acceptance
of the additional extended reporting period coverage.

---
Signature of Insured                    Date
---

139205                      Countersigned By Authorized Representative

G-87522-B31                 PAGE  2
(Ed. 08/95)



PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67    Effective 08/01/03    Endorsement Number    4

## COVERAGE OF AND CAP ON LOSSES FOR CERTIFIED ACTS OF TERRORISM

In consideration of the premium charge of $0.00, it is agreed  as follows:

1.  The DEFINITIONS section  is amended by the addition of the following new term:

    Certified act of terrorism means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.

    The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a certified act of terrorism:

    a.  the act resulted in aggregate losses in excess of $5 million; and
    b.   the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to  coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.  This  Policy provides coverage for losses arising from certified acts of terrorism subject to all other terms and conditions of this policy.

3.  Under the federal Terrorism Risk Insurance Act of 2002, any losses caused by certified acts of terrorism will be partially reimbursed by the United States under a formula established by federal law.  Under this formula, the  United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

4.  With respect to any one or more certified acts of

139206

G-144872-A
(Ed. 01/03)                    PAGE  1



PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67   Effective 8/1/03          Endorsement Number    4

ENDORSEMENT CONTINUED

terrorism, the Insurer will not pay any amounts for which
the Insurer is not responsible under the terms of the federal
Terrorism Risk Insurance Act of 2002 (including subsequent
acts of Congress pursuant to the Act) due to the application
of any clause in such law which results in a cap on the Insurer's
liability for payments for terrorism losses.

All other provisions of this policy remain unchanged.

/139205                          Countersigned By Authorized Representative

G-144872-A                    PAGE  2
(Ed. 01/03)

RX DATE/TIME  :MAR. -25' 04 (THU) 11:06                                    P. 015



PROFESSIONAL LIABILITY
ARCHITECTS/ENGINEERS
Miscellaneous

INSURED: Mechanical Dynamics & Analysis, LLC
Policy MCE-11-397-39-67    Effective 08/01/03    Endorsement Number    5

### PROFESSIONAL SERVICES ENDORSEMENT

We agree with you that the definition of professional services
is revised to include the following:

Professional services also means those services which you are
legally qualified to perform for others in your practice of:

Balancing
Testing
Management/Consulting

All other provisions of this policy remain unchanged.

139205                          Countersigned By Authorized Representative

1-16177-B
(Ed. 04/95)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

State of New York

© 1998, Member Companies of CNA Insurance. All rights reserved.

IMPORTANT NOTICE - PLEASE READ CAREFULLY

UNDER THIS POLICY, CLAIM AND CLAIM EXPENSES ARE INCLUDED WITHIN BOTH THE
APPLICABLE LIMIT OF LIABILITY AND, UNLESS OTHERWISE PROVIDED IN THE POLICY, SELF-
INSURED RETENTION. CLAIM EXPENSES WILL BE APPLIED TO AND ACT AS A REDUCTION OF
SUCH LIMIT OF LIABILITY. THIS COULD THEN RESULT IN SUCH LIMIT OF LIABILITY BECOMING
COMPLETELY EXHAUSTED, IN WHICH CASE, NO FURTHER COVERAGE IS PROVIDED BY THIS
POLICY. PLEASE DISCUSS WITH YOUR AGENT.

## TABLE OF CONTENTS

| I. | COVERAGE AGREEMENTS | Page | 2 |
| II. | DEFINITIONS | Pages | 3 and 4 |
| III. | EXCLUSIONS | Pages | 4 and 5 |
| IV. | LIMITS OF LIABILITY / SELF-INSURED RETENTION | Pages | 5, 6 and 7 |
| V. | CONDITIONS | Pages | 7 through 13 |

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.



NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT TO SUCH EXTENT AS MAY BE PROVIDED HEREIN, THIS POLICY IS LIMITED TO LIABILITY FOR THOSE CLAIMS THAT ARE FIRST MADE AGAINST YOU DURING THE POLICY TERM. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS WITH YOUR INSURANCE AGENT OR BROKER.

Throughout this policy, the terms "We," "Us" and "Our" refer to the Stock Insurance Company, named on the policy Declarations, providing this insurance. We agree with **you** as follows:

**I.      COVERAGE AGREEMENTS**

A.      We will pay all amounts in excess of the self-insured retention up to the limit of liability that **you** become legally obligated to pay as a result of a **wrongful act** anywhere in the world, provided that on the **inception date** on the Declarations any officer, director, principal, partner or insurance manager did not know and could not reasonably have expected that a claim would be made.

B.      A **claim** arising out of a **wrongful act** must first be made during the **policy term**, any subsequent renewal of this policy, or any applicable **extended reporting period**. A **claim** is considered first made when **you** receive notice of the claim or **you** report a **circumstance** in accordance with Section V. Conditions, Item C.

C.      We have the right and duty to defend any **claim** made against **you** seeking amounts that are payable under the terms of this policy, even if any of the allegations of the **claim** are groundless, false or fraudulent. **You** shall:

1.      have the right to consent to our choice of defense attorney, which consent shall not be unreasonably withheld;

2.      participate in and assist in the direction of the defense of any **claim**; and

3.      consent to any settlement, which consent shall not be unreasonably withheld.

We are not obligated to defend, pay any **claim** amounts or **claim expenses** after the applicable limit of our liability has been exhausted by such payments.

D.      If we recommend a settlement or compromise to **you**, that is acceptable to the claimant, and **you** unreasonably withhold consent to such settlement or compromise and elect to contest the **claim** or proceeding and continue any legal proceedings in connection with the **claim**, our obligation to defend ceases and liability is limited to the total amount for which the **claim** could have been settled plus the amount of **claim expenses** incurred up to the time we made the recommendation for settlement. In such case, we shall have the right to withdraw from the further defense of any **claim** or proceeding by tendering control of said defense to **you**.

**II.      DEFINITIONS**

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

When used in this policy, or endorsements attached hereto, the following terms displayed in **"bold** face type" will only have the meaning as stated herein.

**Circumstance** means an event reported during the **policy term** from which **you** reasonably expect that a **claim** could be made.

**Claim** means the receipt by **you** of a demand for pecuniary damages, naming **you** and alleging a **wrongful act.**

**Claim** also means a demand for interest on any judgment or settlement.

**Claim Expenses** means fees charged by an attorney designated or approved by **us** to represent **you**, and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim**, including interest on any judgment or settlement, if incurred by the designated or approved attorney, **us**, or **you** with our written consent.

**Claim Expenses** do not include salaries of our employees or officials, or fees and expenses of independent adjusters retained by **us.**

**Claims-made Relationship** means that period of time between the effective date of the first claims-made policy issued by **us** to **you** and the termination, cancellation or non-renewal of the last consecutive claims-made policy between **you** and **us**, where there has been no gap in coverage, but does not include any period covered by **extended reporting period coverage.**

**Effective Date** means the date on which protection under this policy begins. The effective date **is** shown on the Declarations page as the beginning of the **policy term.**

**Entity** means any individual, partnership, or corporation.

**Extended Reporting Period** extends the time within which a **claim**, resulting from a **wrongful act** that happened prior to the final policy expiration date, may be made and reported.

**Inception Date** means the date of the first policy issued to **you** and continuously renewed by **us.**

**Insured** means any of **you** under this policy.

**Mediation** means non-binding intervention by a neutral third party.

**Nuclear Facility** means the site at which a nuclear reactor is located or where nuclear waste or material is disposed of or stored.

**Personal Injury** means:

1.    bodily injury, sickness, disease, death, mental anguish and emotional distress;

2.    false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of privacy;

3.    malicious prosecution;

4.    humiliation;

5.    slander, libel, or other disparaging comments or materials in violation of an individual's right of privacy.

Page 3 of 13

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

**Policy Term** means the period of time between the effective date and the date of termination, expiration or cancellation. Policy term does not include any extended reporting period.

**Professional Services** means those services that you are legally qualified to perform for others in your practice as an architect, engineer, land surveyor, landscape architect, construction manager, or as specifically defined by endorsement to this policy.

**Single Claim** means one or more claims arising out of a single **wrongful act**, or out of related **wrongful acts**.

**Wrongful Act** means a negligent act, error or omission in the performance of **professional services** for others by **you** or any entity, including joint ventures, for whom **you** are legally liable.

**You or Your** means:

1.  an entity listed in Item 1. on the Declarations;

2.  any past or present partner, officer, director, stockholder or employee while acting within the scope of their duties for an entity listed in Item 1. of the Declarations, or leased personnel under **your** direct supervision; or

3.  a retired partner, officer, director or employee while acting within the scope of their duties as a consultant for an entity listed in Item 1. on the Declarations.

## III.    EXCLUSIONS

We will not defend or pay under this policy for **claim** or **claim expenses** arising out of:

A.  any dishonest, fraudulent, or criminal conduct committed intentionally by **you** or at **your** direction;

B.  fines, penalties or liquidated damages imposed on any insured, or the failure or refusal

    a client to pay all or any part of monies due **you**;

C.  punitive or exemplary amounts assessed against any **insured**;

D.  liability of others **you** have assumed under a contract or agreement unless the liability is caused by **your wrongful act**;

E.  the cost to repair or replace faulty workmanship in any construction, erection, fabrication, installation, assembly, manufacture or remediation performed by **you** including any materials, parts or equipment furnished in connection therewith;

F.  express warranties or guarantees;

G.  the design or manufacture of any goods or products which are sold or supplied by **you** or by others under license from **you**;

H.  a claim made against **you** by any entity which:

    1.  is operated, managed or controlled by **you** or in which **you** have an ownership interest in excess of 15%; or in which **you** are an officer or director; or

Page 4 of 13

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

2.    wholly or partly owns, operates or manages **you**;

I.    **personal injury** sustained by any employee of **yours** arising out of employment by **you**; or any obligation for which **you** must pay under any unemployment, workers' compensation, disability benefits or other similar laws;

J.    actual or alleged discrimination because of race, religion, color, sex, national origin, age or disability against:

    1.    a past or present employee or officer of, or employment applicant of yours; or

    2.    any party in the awarding of, or failure to award any contract;

K.    any **claim** brought by **you** or on **your** behalf against another of **you** covered by this policy;

L.    nuclear reaction, radiation or contamination, under any circumstances and regardless of cause, within or originating from a nuclear facility;

M.    **professional services** for which you are insured, under any professional liability policy issued for a specific project or projects. This exclusion applies even if **claim** or **claim expenses** are not covered in whole or in part by that policy for any reason, including but not limited to an exclusion, or a reduction or exhaustion of the limits of liability under such policy.

## IV.    LIMITS OF LIABILITY / SELF-INSURED RETENTION

A.    Limits of Liability

    1.    The limit of liability shown under Item 6.a. on the Declarations is the maximum **we** will pay for any **single claim** first made during the **policy term** or **circumstances** reported during this **policy term**. This limit applies as excess over any self-insured retention amount.

    2.    The aggregate limit of liability shown under Item 6.b. on the Declarations is the maximum **we** will pay for all **claims** first made during the **policy term** or **circumstances** reported during the **policy term**. This limit applies as excess over any self-insured retention amount.

    3.    All **claims** constituting a **single claim**, whenever made, shall be considered first made during the **policy term** in which the earliest **claim** or reported **circumstance** was made. All such **claims** or reported **circumstances** shall be subject to the limit of liability and self-insured retention of the **policy term** in which the earliest **claim**     was made or **circumstance** reported

    4.    **Claim expenses** are subject to and included within the applicable limit of liability.

B.    Self - Insured Retention

    1.    **You** shall have the obligation to pay up to the applicable self-insured retention amount shown on the Declarations for **claim** and/or **claim expenses** combined

Page 5 of 13

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

exceed

resulting from a single claim. The self-insured retention amount shall not the amount stated on the Declarations.

2.  Until a claim is made the self-insured retention does not apply to claim expenses when you report a circumstance. Any claim expenses must be approved by us before being incurred.

3.  If we and you agree to use mediation and if we and you resolve any claim by mediation, your self-insured retention obligation will be reduced by 50% subject to a maximum reduction of $15,000. Self-insured retention payments made prior to the application of the above credit will be reimbursed within 30 days of the resolution of the claim.

**C.    Reimbursement**

If we have paid any amounts for claim or claim expenses in excess of the applicable limit of liability, or within the amount of your self-insured retention, you shall be liable to us for all such amounts, and upon demand, shall pay such amounts to us.

**D.    Limitation on Our Duty to Defend**

If we conclude that the limit of liability applicable to claim may become exhausted prior to the conclusion of any claim, we will notify you, in writing, to that effect.

When the limit of liability applicable to claim has actually been exhausted prior to the conclusion of the claim, we will notify you, in writing, as soon as practicable, that such limit has been exhausted and that our duty to defend such claim and any other claim has ended.

exhaustion of

We will initiate, and cooperate in, the transfer of control to you, of any claims which were the subject to that limit of liability and which were reported to us prior to the such limit. You must cooperate in the transfer of control of such claims.

We agree to take the necessary steps as we deem appropriate to avoid a default in, or continue the defense of, such claims until such transfer has been completed, provided that you are cooperating in completing such transfer.

You must reimburse us for expenses we incur in taking those steps we deem appropriate to avoid a default in, or continuing the defense of, any claim.

We will not take any action with respect to any claim that would have been subject to such limit of liability, had it not been exhausted, if the claim is reported to us after that limit has been exhausted.

The exhaustion of any limit by payment of any claim, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the terms and conditions of this provision.

**E.    More Than One Of You**

The inclusion of more than one of you covered under this policy shall not increase either the applicable self-insured retention or limit of liability.

**F.    Defendants Reimbursement**

G-126985-A31
(Ed. 01/99)

Page 6 of 13

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance.  All rights reserved.

In addition to our limit of liability, we will also pay your actual loss of earnings up to $250 a day, subject to a maximum amount of $5,000 per claim, because of time off from work for attendance, at our request, at a trial, hearing or deposition involving a civil suit, mediation or arbitration proceeding against you otherwise covered by this policy. These supplementary payments are not subject to the self-insured retention.

## V.    CONDITIONS

### A.    Your Duties As The First Named Entity On The Policy Declarations

When there is more than one entity named in Item 1. on the Declarations, the first named entity, on behalf of all others, will be:

1.   authorized to make changes in the terms of this policy with our written consent;

2.   the payee of any premiums we refund;

3.   responsible for:

   a.   the payment of all premiums and self-insured retention obligations;

   b.   keeping records of the information we need for premium computation, and sending us copies at such times as we may request;

   c.   notifying us that you want to cancel this policy.

### B.    Your Duties If There Is A Claim

In the event of a claim, notice given by or on your behalf, or written notice by or on behalf of the injured person(s) or any other claimant to any of our licensed agents in the State, with particulars sufficient to identify you, shall be deemed notice to us.

If there is a claim, you must do the following:

1.   promptly notify us in writing. This notice must be sent or faxed to the attention of:

   Director of Claims
   CNA Insurance
   Two Wisconsin Circle
   Chevy Chase, Maryland  20815-7003

   The notice must be given to us as soon as reasonably possible and within the policy term, any subsequent renewal of this policy, or within 60 days after its termination unless an extension of the extended reporting period applies;

2.   specify the names and addresses of the persons making claim against you and provide us with information on the time, place and nature of the claim;

3.   promptly forward to us all documents which you receive in connection with the claim;

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

conduct of
indemnity against
trials, assist in

4. fully cooperate with us or our designee in the making of settlement, the suits or other proceedings, enforcing any right of contribution or another who may be liable to you. You shall attend hearings and securing evidence and obtaining the attendance of witnesses;

5. refuse, except solely at your own cost, to voluntarily make without our approval any payment, admit liability or assume any obligation or incur any expense.

If you have the right under any professional services contract to either reject or demand arbitration or other alternative dispute resolution process of any claim, you shall only do so with our written consent.

shall

The failure to give any notice required by this policy within the time prescribed herein

not invalidate coverage hereunder for any claim made if it can be shown that it was not reasonably possible to give such notice within the prescribed time and if notice was given as soon as was reasonably possible.

C. Your Rights And Duties In The Event Of A Circumstance

if

If you become aware of a circumstance for which coverage is provided hereunder, and you, during the policy term, give us written notice containing:

1. what happened and the professional services you provided; and

2. the nature of any possible injury or damages; and

3. how you first became aware of such circumstance;

then any claim that may subsequently be made against you arising out of such circumstance shall be deemed to have been made on the date we received written notice of the circumstance.

You will refuse, except solely at your own cost, to voluntarily make without our approval any payment, admit liability or assume any obligation or incur any expense. Expenses incurred as a result of investigating or handling a claim will only apply to the available limit of liability from the date the circumstance becomes a claim.

D. Subrogation

If any of you have rights to recover amounts from another, those rights are transferred to us to the extent of our payment. You must do everything necessary to secure these rights and must do nothing after claim is made to jeopardize them.

to

We hereby waive subrogation rights against your client to the extent that you had, prior claim or circumstance, a written agreement to waive such rights.

E. Premium

All premium charges under this policy will be computed according to the rules, rates and rating plans which apply at the effective date of the current policy term.

F. Examination and Audit

Page 8 of 13

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

You agree to allow us to examine and audit your financial books and records that relate to this insurance. We may do this within one hundred and eighty (180) days after expiration of this policy. We shall, as soon as practicable following such audit, refund or credit your account for any return premium due you, or bill and make a good faith effort to collect any additional premium due us, as a result of such audit.

If you fail to cooperate with us in our attempt to conduct such audit, including your failure to return any questionnaires or self-audit worksheets, we shall have the right to non-renew your policy upon completion of the current **policy term**, in accordance with the provisions of Section 3426 of the New York Insurance Law, due to our inability to establish your proper premium.

G.    Legal Action Limitation

1.    You agree not to bring any legal action against us concerning this policy unless you have fully complied with all the provisions of this policy, and the amount of your obligation to pay has been decided.

2.    Such amount can be decided by final judgment against you or by written agreement between you, us and the claimant. You agree to bring any such action in two years, or during any applicable statute of limitations for the bringing of such action, whichever is longer.

3.    Any entity, or its legal representative, is entitled to recover under this policy after it has secured such judgment or written agreement. Recovery is limited to the extent of the insurance afforded by this policy. No entity has any right under this policy to include us in any action against you to determine your liability, nor will we be brought into such an action by you or your representative.

4.    If you or your estate become bankrupt or insolvent, it does not change any of our obligations under this policy.

5.    If any judgment against you or your legal representative remains unsatisfied at the expiration of 30 days from the serving of notice of entry of judgment upon your legal representative, and upon us, then an action may, except during a stay or limited stay of execution against you on such judgment, be maintained against us under the terms of the policy for the amount of such judgment not to exceed the amount of the applicable limits of liability under the policy.

H.    Changes

Notice to any of our agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this policy. It also will not prevent us from asserting any rights under the provisions of this policy.

None of the provisions of this policy will be waived, changed or modified except by written endorsement issued to form a part of this policy.

I.    Transfer of Interest

You must first obtain our written consent to transfer or assign this policy. Should you die the policy will continue for the remaining part of the **policy term**, first, for the benefit of your legal representative while acting within the scope of such duties; and second, for

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

the benefit of anyone having proper temporary custody of your property until a legal representative is appointed.

J.    Other Insurance

If you have other insurance which applies to the claim, the other insurance must pay first. It is the intent of this policy to apply to the amount of claim that is in excess of the limit of liability of the other available insurance. We will not pay more than our limit of liability.

This provision does not apply if the other insurance is specifically written to apply on an excess basis over this insurance.

K.    Cancellation / Non-Renewal

1.    This Policy may be canceled by the Named Insured by surrendering it to us or any of our authorized agents. The Named Insured may also cancel this Policy by written notice to us stating at what future date cancellation is to be effective.

2.    If this Policy has been in effect for 60 days or less, this Policy may be canceled by us by mailing or delivering to the Named Insured written notice stating the reason for cancellation at the mailing address shown in on the Declarations, and to its authorized agent or broker at least:

   a.    20 days before the effective date of cancellation if this Policy is canceled for any reason not included in paragraph b. below.

   b.    15 days before the effective date of cancellation if this Policy is canceled for any of the following reasons:

      (1)    nonpayment of premium;

      (2)    conviction of a crime;

      (3)    discovery of fraud or material misrepresentation in the obtaining of this Policy or in the presentation of a claim;

      (4)    after issuance of this Policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy term;

      (5)    material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of this Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time this Policy was issued or last renewed;

      (6)    required pursuant to a determination by the New York State Superintendent of Insurance that continuation of our present premium volume would jeopardize our solvency or be hazardous to our interest policyholders, creditors or the public;

      (7)    a determination by such Superintendent that the continuation of this Policy would violate, or would place us in violation of, any provision of the New York Insurance Code; or

      (8)                                  revocation or suspension of the your professional license.

3.    If this Policy has been in effect for more than 60 days, or if this Policy is a renewal or continuation of a policy issued by us, this Policy may be canceled by us only for any reasons listed in paragraph 2.b. above provided a written notice stating the reason for cancellation is mailed or delivered to the Named Insured at the address shown in the Declarations, and its authorized agent or broker at least 15 days before the effective date of cancellation.

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

4.  Notice of cancellation will state   the effective date of cancellation. The policy term will end on this date. If notice is mailed, proof of mailing will be sufficient proof of notice.

5.  If the Named Insured cancels, earned premium will be computed in accordance with the customary short rate table and procedure. If we cancel, earned premium shall be computed pro rata. However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

6.  If one of the reasons for cancellation set forth in Paragraph M.2.b. exists, we may cancel this entire Policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this Policy.

Nonrenewal/Conditional Renewal

1.  If we elect not to renew this Policy, we shall send notice as provided in paragraph 3. below along with the reason for nonrenewal.

2.  If us condition renewal of this Policy upon:
    a.  change of limits;
    b.  change in type of coverage;
    c.  reduction of coverage;
    d.  increased deductible;
    e.  addition of exclusion;
    f.  increased premiums in excess of 10%, exclusive of any premium increased due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;
    we shall send notice as provided in paragraph 3.b. below.

3.  Notice of nonrenewal and conditional renewal will be provided as follows:
    a.  If we decide not to renew this Policy or to conditionally renew this Policy as provided in paragraphs 1. and 2. above, we shall mail or deliver written notice to the Named Insured at least 60 but not more than 120 days before:
        (1)  the expiration date; or
        (2)  the anniversary date if this is a continuous policy.
    b.  Notice will be mailed or delivered to the Named Insured at the address shown in the Declarations and its authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

We will not send the Named Insured notice of non-renewal or conditional renewal if the Named Insured or its authorized agent or broker or another insurer of the Named Insured mails or delivers notice that this Policy has been replaced or no longer desired.

L.  Severability of Interests

The term you is used severally and not collectively.

M.  Innocent Principals

If coverage under this policy would not apply because of Exclusion A or because of non-compliance with Condition B, such Exclusion or Condition will not apply to each of you who did not commit, participate in, or have knowledge of any of the acts described provided you comply with all policy provisions.

G-126985-A31
(Ed. 01/99)

THE PROFESSIONAL LIABILITY POLICY FOR DESIGN PROFESSIONALS
© 1998, Member Companies of CNA Insurance. All rights reserved.

7.  Only one such extended      reporting period coverage endorsement shall be issued and the extended period for such coverage shall be either three (3) or five (5) years. This extension period includes the automatic sixty (60) day extension specified in Item 1., above.

8.  Limits of liability for such coverage shall be equal to 100% of the terminated policy's annual aggregate limit where a **claims-made relationship** has continued for three (3) years or more.

    If the **claims-made relationship** has continued for less than three (3) years, the limit of liability shall be equal to the greater of:

    a.  the amount of coverage remaining in such policy's annual aggregate liability limit; or

    b.  50 percent of such policy's annual aggregate liability limit.

9.  Extended Reporting Period Coverage ends at the same time as the last installment period for which premium has been paid if you fail to pay the premium    when due for the next installment period.

O.  Bankruptcy/Insolvency

    The insolvency or bankruptcy of the first of **you** named on the Declarations, or the insolvency of their estate, shall not release **us** from the payment of damages for injury sustained or loss occasioned during the life of and with the coverage of this **policy**.

P.  Continuity of Coverage

    During a **claims-made relationship** and any extended reporting period, a person employed or otherwise affiliated with **you** and covered by **your** claims-made policy during such affiliation, shall continue to be covered under such **policy** and any extended reporting period after such affiliation has ceased for such person's covered wrongful acts during such affiliation.

This policy shall not be valid unless countersigned on the Declarations by a duly authorized representative of this Company.

*D. H. Choobaozian*
**Chairman of the Board**

*D. W. Long*
**Secretary**

Page 13 of 13

G-126985-A31
(Ed. 01/99)

# EXHIBIT C

`Aug 09 05 10:44a    J. .et Dell'Anno                      949 70J 2537                  p.2



Architect, Engineer & Construction Design Liability                    Janet M. Mansell Dell'Anno
29941 Aventura, #K-325, Rancho Santa Margarita, California 92688       Claims Specialist
                                                                       Telephone:  949-709-2537
**August 9, 2005**                                                     Facsimile:   866-363-1081
                                                                       Internet:    janet.dellanno@cna.com

<u>VIA FAX</u>
<u>VIA CERTIFIED MAIL</u>

Mr. Robert Coleman
Mr. John Vanderhoef
Mechanical Dynamics & Analysis, LLC
29 British American Blvd.
Latham, NY 12110

Re:    Insured:        Mechanical Dynamics & Analysis, LLC
       Claimant:       Cholla Power Plant
       Policy No.:     MCE-113973967
       Claim No.:      AE196453
       Carrier:        Continental Casualty Company

Dear Mr. Coleman and Mr. Vanderhoef:

On behalf of Continental Casualty Company, this will acknowledge our receipt of the May 23, 2005 letter from Ralph Savage with a copy of the complaint entitled, <u>Arizona Public Service Company, et al. vs. Mechanical Dynamics and Analysis, LLC, et al.</u> and will provide you with our assessment of the coverage issues that are or may be presented by this matter under Professional Liability Policy, policy number MCE-113973967, issued to Mechanical Dynamics and Analysis on a claims made and reported basis for the policy term 8/1/03 to 8/1/04.

The Limit of Liability for this policy is $5,000,000 per year with a $5,000,000 aggregate for all claims. The policy also contains a deductible in the amount of $250,000 per claim.

This letter will serve to follow up with you regarding coverage on the above referenced matter. This analysis supersedes our previous letter of April 5, 2004 wherein coverage for this matter was disclaimed.

Continental Casualty Company reserves its rights to the extent that the claim does not fall within the Coverage Agreements of the policy.   We direct your attention to your policy section I. Coverage Agreements, which reads, in part:

**I.     *COVERAGE AGREEMENTS***

*A.      We will pay all amounts in excess of the self-insured retention up to the limit of liability*

that *you* become legally obligated to pay as a result of a **wrongful act** anywhere in the world, provided that on the **inception date** on the Declarations any officer, director, principal, partner or insurance manager did not know and could not reasonably have expected that a **claim** would be made.

B.    A **claim** arising out of a **wrongful act** must first be made during the **policy term**, any subsequent renewal of this policy, or any applicable **extended reporting period**. A **claim** is considered first made when *you* receive notice of the **claim** or *you* report a **circumstance** in accordance with Section V. Conditions, Item C.

C.    We have the right and duty to defend any **claim** made against *you* seeking amounts that are payable under the terms of this policy, even if any of the allegations of the **claim** are groundless, false or fraudulent. **You** shall:

    1.    have the right to consent to our choice of defense attorney, which consent shall not be unreasonably withheld;

    2.    participate in and assist in the direction of the defense of any **claim**; and

    3.    consent to any settlement, which consent shall not be unreasonably withheld.

    We are not obligated to defend, pay any **claim** amounts or **claim expenses** after the applicable limit of our liability has been exhausted by such payments.

D.    If we recommend a settlement or compromise to *you*, that is acceptable to the claimant, and *you* unreasonably withhold consent to such settlement or compromise and elect to contest the **claim** or proceeding and continue any legal proceedings in connection with the **claim**, our obligation to defend ceases and liability is limited to the total amount for which the **claim** could have been settled plus the amount of **claim expenses** incurred up to the time we made the recommendation for settlement. In such case, we shall have the right to withdraw from the further defense of any **claim** or proceeding by tendering control of said defense to *you*.

The Policy also provides the following definitions as follows:

II.    *DEFINITIONS*

**Claim** means the receipt by you of a demand for pecuniary damages, naming *you* and alleging a **wrongful act**.

**Claim** also means a demand for interest on any judgment or settlement.

**Claim Expenses** means fees charged by an attorney designated or approved by us to represent *you*, and all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim**, including interest on any judgment or settlement, if incurred by the designated or approved attorney, us, or *you* with our written consent.

*Claim Expenses* do not include salaries of our employees or officials, or fees and expenses of independent adjusters retained by us.

*Professional services* means those services that *you* are legally qualified to perform for others in *your* practice as an architect, engineer, land surveyor, landscape architect, construction manager or as specifically defined by endorsement to this policy.

*Wrongful Act* means a negligent act, error or omission in the performance of *professional services* for others by *you* or any entity, including joint ventures, for whom *you* are legally liable.

*You or Your* means:

    1.    an *entity* listed in Item 1. on the Declarations;

    2.    any past or present partner, officer, director, stockholder or employee while acting within the scope of their duties for an *entity* listed in item 1. of the Declarations, or leased personnel under *your* direct supervision; or

    3.    a retired partner, officer, director or employee while acting within the scope of their duties as a consultant for an entity listed in Item 1. on the Declarations.

Your policy also includes Endorsement Number 5, Professional Services Endorsement, which reads:

*We agree with you that the definition of professional services is revised to include the following:*

    *Professional services* also means those services which *you* are legally qualified to perform for others in your practice of :
    *Balancing*
    *Testing*
    *Management/Consulting*

Continental Casualty Company notes in this context that the plaintiffs consistently and almost exclusively allege that the alleged negligence (if any) arose out of the parts, equipment and repair services that you provided. Such allegations do not appear to involve **professional services**, as that term is defined in/by the policy.

We also direct your attention to the following policy exclusions that may apply to this matter. Please refer to policy Section III. Exclusions, which reads in part:

## III.    EXCLUSIONS

*We will not defend or pay under this policy for claim or claim expenses arising out of:*

D.    *liability of others you have assumed under a contract or agreement unless the liability is caused by your wrongful act;*

E.    *the cost to repair or replace faulty workmanship in any construction, erection, fabrication, installation, assembly, manufacture or remediation performed by you including any materials, parts or equipment furnished in connection therewith;*

F.    *express warranties or guarantees;*

G.    *the design or manufacture of any goods or products which are sold or supplied by you or by others under license from you;*

A review of the complaint reveals allegations that "On March 4, 2003, APS and MD&A entered into an agreement in which MD&A agreed to inspect, investigate, evaluate, make recommendations and provide parts, equipment and services concerning the repair and maintenance needs of the Unit 3 generator at the Cholla Power Plant..." There are a number of references throughout the complaint of allegations regarding the repair of the generator and these do not appear to fall within the coverage provided by Continental Casualty Company policy. Further, there are allegations that "Under Section 16 of the Master Agreement, MD&A further agreed to indemnify APS and APS's insurers from any and all losses and damages that APS and its insurers may incur for any loss of, or damage to, APS property" and allegations of Breach of Warranty for which we would not provide coverage.

Finally, we direct your attention to Section V. Conditions, item K. which states:

V.    *CONDITIONS*

K.    *Other Insurance*

*If you have other insurance which applies to the claim, the other insurance must pay first. It is the intent of this policy to apply the amount of claim that is in excess of the limit of liability of the other available insurance. We will not pay more than our limit of liability.*

*This provision does not apply if the other insurance is specifically written to apply on an excess basis over this insurance.*

The coverage provided by Continental Casualty Company is only for wrongful acts arising out of professional services as defined in the policy. It is possible that you may have coverage for some issues under your general liability policy. To the extent that you have any other insurance that you believe may be applicable, we strongly suggest that you place those carriers on notice immediately, if you haven't already done so.

It is our responsibility to notify you that Continental Casualty Company shall not waive any of the rights of either of the parties under this policy. It is the intent of this Reservation of Rights to

permit a full investigation of this claim and defense of this lawsuit without, in any way, affecting, impairing or waiving any of the rights of Continental Casualty Company. No act done by way of this investigation or defense shall be construed as an admission of liability or coverage under the policy of any nature whatsoever.

We must also inform you that Continental Casualty Company will not indemnify you or pay on your behalf any judgments or awards of damages resulting from claims that are not covered by its policy.

In the event you are aware of any facts or circumstances or have information that you believe may affect our coverage evaluation of this matter, please notify me promptly.

Very truly yours,

*Janet Mansell Dell'Anno*

Janet M. Mansell Dell'Anno
Claims Specialist

cc:  Ralph Savage
     Savage Law Firm
     450 Schauber Road
     Ballston Lake, New York 12019-1160

# EXHIBIT D

AMERICAN INTERNATIONAL COMPANIES

99 HIGH STREET

January 21, 2003

BOSTON, MA 02110

Attn: ROGER SADDLEMIRE
AVID INSURANCE AGENCY INC
425 NEW KARNER ROAD
ALBANY, NY 12205

**AIG**

AIG Excess Casualty℠

RE: MECHANICAL DYNAMICS & ANALYSIS INC

Policy Number: BE    1399693
Policy Effective/Expiration: From: December 31, 2002    To: December 31, 2003

Dear ROGER,

Enclosed are one original and one copy of the policy for the above captioned account.  Upon review of the policy, we believe it is complete and accurate based upon the binder.  However, if you discover anything you believe to be incomplete or inaccurate, please call me and your concerns will be investigated.

Thank you for the opportunity to be of service to your company on this account.  We look forward to working with you on future opportunities.

Best regards,

ANDREAS GRAHAM
UNDERWRITING SPECIALIST
617-457-2980

AH0800 (06/01)

*Archive Copy*

# FORMS SCHEDULE

**Named Insured:**  MECHANICAL DYNAMICS & ANALYSIS INC

**Policy Number:**  BE    1399693
**Effective 12:01 AM:**  December 31, 2002

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | COMM UMB DEC NAT UNION OF PA | 57696 | (06/93) |
| | COMM UMB POL FORM | 57697 | (06/93) |
| | Prem Incl Terrorism Notice | | |
| 1 | CONTRACTOR'S ENDR EXCLUDED HAZARDS | 81249 | (12/02) |
| 2 | CRISIS RESPONSE AND EXCESS CASUALTY CRISIS FUND | 57707 | (06/93) |
| 3 | NOTICE OF OCCURRENCE | 74641 | (12/99) |
| 4 | KNOWLEDGE OF OCCURRENCE | 62223 | (03/95) |
| 5 | NY AMENDATORY | 62224 | (03/95) |
| 6 | AUTOMOBILE LIAB FOLLOW-FORM | 60593 | (06/94) |
| 7 | EMPL BENFTS LIAB FOLLOW-FORM CLM MADE V2 | 60446 | (05/94) |
| 8 | ARCHITECTS AND ENGINEERS ERROR AND OMISSION | 62081 | (02/95) |
| 9 | FOREIGN LIAB EXCL | 57698 | (06/93) |
| 10 | CROSS SUITS EXCL | 60419 | (05/94) |
| 11 | FAILURE TO SUPPLY EXCL | 60441 | (05/94) |
| 12 | LEAD EXCL | 60456 | (05/94) |
| 13 | COMMERCIAL UMBRELLA POLICY FUNGUS EXCLUSION | 61718 | (12/94) |
| 14 | MARINE LIAB EXCL | 78691 | (08/01) |
| 15 | MTBE AND OTHER FUEL OXYGENATES EXCLUSION | 60468 | (05/94) |
| 16 | RADIOACTIVE MATERIAL OR EQUIPMENT EXCL | 78183 | (06/01) |
| 17 | PROFESSIONAL LIAB EXCL | 57838 | (06/93) |
| 18 | UNDERGROUND STORAGE TANK EXCL | 60458 | (05/94) |
| 19 | SUBSIDENCE EXCL | 71277 | (07/98) |
| 20 | TOTAL POLLUTION EXCL | 57725 | (06/93) |
| 21 | NH UNINSURED MOTORISTS COV | 62221 | (03/95) |
| 22 | VT UNINSURED MOTORISTS COVERAGE | 62413 | (04/95) |
| | | 59264 | (05/94) |

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

CIWSC
CI0226        2   AI3999    *Archive Copy*

**AIG**    **COMMERCIAL UMBRELLA DECLARATIONS**

# NATIONAL UNION FIRE INSURANCE COMPANY
# OF PITTSBURGH, PA.

### A CAPITAL STOCK COMPANY

ADMINISTRATIVE OFFICES
70 PINE STREET, NEW YORK, N.Y. 10270-0150

**POLICY NUMBER:** BE   1399693                    **RENEWAL OF:** 1391684

**PRODUCER NAME:** AVID INSURANCE AGENCY INC.

**ADDRESS:**        425 NEW KARNER ROAD
ALBANY, NY 12205

**ITEM 1.    NAMED INSURED:**   MECHANICAL DYNAMICS & ANALYSIS INC

**ADDRESS:**        133 MAPLE AVE
SCHENECTADY, NY 12302-4615

**ITEM 2.    POLICY PERIOD:   FROM:** December 31, 2002      **TO:** December 31, 2003
AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.    LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

| | | |
|---|---|---|
| A. | $9,000,000 | Each Occurrence |
| B. | $9,000,000 | General Aggregate (in accordance with Section III, Limits of Insurance) |
| C. | $9,000,000 | Products-Completed Operations Aggregate (in accordance with Section III, Limits of Insurance) |
| D. | $10,000 | Self Insured Retention |

**ITEM 4.    PREMIUM COMPUTATION**

| ESTIMATED EXPOSURE | RATE / PER | ADVANCE PREMIUM | MINIMUM PREMIUM |
|---|---|---|---|
| N/A | FLAT | $181,072.00 | $181,072.00 |

THE ENDORSEMENTS ATTACHED ARE BETAETACHED SCHEDULE

**NOTICE**

APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

COUNTERSIGNED _____ DATE _____    **BY** _____

57696 (6/93)      2 A13906                              **AUTHORIZED REPRESENTATIVE**

ARCHIVE

# Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word "**Insured**" means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## Insuring Agreements

I.    **Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured**, then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

II.   **Defense**

A.    We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

1.    The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

2.    Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured**.

B.    When we assume the defense of any claim or suit:

1.    We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

2.    We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured**:

a.    premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

b.    premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to furnish any such bond;

c.    all costs taxed against the **Insured** in any claim or **suit** we defend;

    d.    pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

    e.    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

    f.    the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

**C.**    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## III.    Limits of Insurance

**A.**    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    1.    **Insureds**;

    2.    Claims made or **suits** brought; or

    3.    Persons or organizations making claims or bringing **suits**.

**B.**    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    1.    Damages included in the **Products-Completed Operations Hazard**; and

    2.    Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

**D.**    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence**.

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    1.    In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    2.    In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATUTORY DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

E.    Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured**; or

2.    The amount stated in the Declarations as Self Insured Retention as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured**;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

## IV.    Definitions

A.    **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

1.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.    Oral or written publication of material that violates a person's right of privacy;

3.    Misappropriation of advertising ideas or style of doing business; or

4.    Infringement of copyright, title or slogan.

B.    **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

C.    **Bodily Injury** means bodily injury, sickness, disability or disease. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

D.    **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.    It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.    The repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.    Your fulfilling the terms of the contract or agreement.

E.    **Insured** means each of the following, to the extent set forth:

1.    The **Named Insured**, meaning:

a.    any person or organization listed in Item 1 of the Declarations, and any company that is the successor in name of this policy and any company you own or control as of the effective date of this policy; and

any such organization newly acquired controlled or formed by you during the policy period but

**NOTICE:** THESE RATE(S) OR FORMS ARE NOT APPLICABLE RATES ARE EXEMPT FROM THE REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57697 (6/93)        2    43906        (5)

1)  as respects **Occurrences** taking place after you acquire, take control or form such organization;

2)  if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3)  if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2.  If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3.  If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

4.  Any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5.  Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6.  Any person, other than one of your employees, or organization while acting as your real estate manager.

7.  Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

a.  liability arising out of operations conducted by you or on your behalf; or

b.  facilities owned or used by you.

8.  Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your be half and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

F.  **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G.  **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

**NOTICE:** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public

THESE POLICY FORMS AND THE roads;

APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES Vehicles maintained for use solely on or next to premises you own or rent; MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57697 (6/93)            2    A13006

A13001                        Archive Copy

   3.  Vehicles that travel on crawler treads;

   4.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a.  power cranes, shovels, loaders, diggers or drills; or

   b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

   5.  Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b.  cherry pickers and similar devices used to raise or lower workers;

   6.  Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos:**

   a.  equipment designed primarily for:

   1)  snow removal;

   2)  road maintenance, but not construction or resurfacing; or

   3)  street cleaning;

   b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H.  **Occurrence** means:

   1.  As respects **Bodily Injury** or **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence;**

   2.  As respects **Personal Injury,** an offense arising out of your business that results in **Personal Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

   3.  As respects **Advertising Injury,** an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one **Occurrence,** regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I.  **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

   1.  False arrest, detention or imprisonment

57697 (6/93)                         2 A1309B                         (1

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

J. 1. **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

   a. products that are still in your physical possession; or

   b. work that has not yet been completed or abandoned.

2. **Your Work** will be deemed completed at the earliest of the following times:

   a. When all of the work called for in your contract has been completed.

   b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

   a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

   b. the existence of tools, uninstalled equipment or abandoned or unused materials.

K. **Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

L. **Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

1. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

M. **Your Product** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57697 (6/93)    2    A13909
A710031

**Your Product** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**N.** **Your Work** means:

1. Work or operations performed by you or on your behalf; and

2. Materials, parts or equipment furnished in connection with such work or operations.

**O.** **Your Work** includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2. The providing of or failure to provide warnings or instructions.

## V.   Exclusions

This insurance does not apply to:

**A.** Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

**B.** Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

**C.** Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

**D.** **Property Damage** to:

1. Property you own, rent, occupy or use;

2. Personal property in the care, custody or control of the **Insured**.

**E.** **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**F.** **Property Damage** to **Your Product** arising out of it or any part of it.

**G.** **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

NOTICE This exclusion does not apply if the damaged work or the work out of which the damage arises was
APPLICABLE performed on your behalf by a subcontractor.
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
57697 (6/93)          2    A13000          (7)
A110001           Tentative Copy

H.  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   1.  **Your Product;**

   2.  **Your Work; or**

   3.  **Impaired Property**

   if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.  Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

   However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

   1.  This exclusion shall not apply; and

   2.  The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.  **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

   However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

   1.  This exclusion shall not apply; and

   2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.  **Personal Injury** or **Advertising Injury:**

   1.  Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

   2.  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   3.  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured**; or

   4.  For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.  **Advertising Injury** arising out of:

   1.  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   2.  The failure of goods, products or services to conform with advertised quality or performance;

   3.  The wrong description of the price of goods, products or services; or

   4.  An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57697 (6/93)    2    *Archive Copy*    (8)

M.    1.    **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

      2.    Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

      3.    Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of:

    a.    Heat, smoke or fumes from a hostile fire;

    b.    The upset, overturn or collision of a motor vehicle; or

    c.    The **Products-Completed Operations Hazard;**

if insurance for such **Bodily Injury, Property Damage** or **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such **Bodily Injury, Property Damage** or **Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

    a.    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. "Waste material" includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

    b.    A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

N.    **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condit ion incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

O.    **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured.**

However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

P.    1.    **Bodily Injury, Property Damage** or **Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

      2.    Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

      3.    Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage** or **Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage** or **Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products,

**NOTICE:** THESE FORMS AND RATES ARE APPLICABLE RATES EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57697 (6/93)    2

Q.    Bodily Injury or Personal Injury to:

    1.    A person arising out of any:

        a.    Refusal to employ that person;

        b.    Termination of that person's employment; or

        c.    Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    2.    The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

    1.    Whether the **Insured** may be liable as an employer or in any other capacity; and

    2.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

R.    **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of or by reason of:

    1.    The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

    2.    Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

    3.    Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

S.    **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

    1.    Causing or contributing to the intoxication of any person;

    2.    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    3.    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    1.    This exclusion shall not apply; and

    2.    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

T.    **Bodily Injury or Property Damage:**

    a.    with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

**NOTICE:** APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE DEPARTMENT. HOWEVER, SUCH RATES AND SUCH POLICY MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57697 (6/93)    2 of 20    (19)

A210084

Archive Copy

1. b.   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

   a.   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

   b.   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   c.   the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3. As used in this exclusion:

   a.   "hazardous properties" includes radioactive, toxic or explosive properties;

   b.   "nuclear material" means source material, special nuclear material or by-product material;

   c.   "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

   d.   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   e.   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   f.   "nuclear facility" means:

      1)   any nuclear reactor;

      2)   any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

      3)   any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

      4)   any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

and "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

57697 (6/93)    2
A16884

h)    **Property Damage** includes all forms of radioactive contamination of property.

**VI.    Conditions**

A.    Appeals

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

B.    Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

C.    Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

D.    Cancellation

1.    You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.    The policy period will end on the day and hour stated in the cancellation notice.

4.    If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5.    If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6.    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.    The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

**NOTICE:** APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57697 (6/93)                    2                        (12)

E.  Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

F.  Duties In The Event Of An **Occurrence**, Claim Or **Suit**

1.  You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy. To the extent possible, notice should include:

a.  how, when and where the **Occurrence** took place;

b.  the names and addresses of any injured persons and witnesses; and

c.  the nature and location of any injury or damage arising out of the **Occurrence**.

2.  If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.  You and any other involved **Insured** must:

a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

b.  authorize us to obtain records and other information;

c.  cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

d.  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.  No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

G.  Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

H.  Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1.  You have complied with all the terms of this policy; and

2.  The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

I.  Maintenance Of Underlying Insurance

You must maintain the policies listed in the Schedule of Underlying Insurance in full force and effect;

57697 (6/93)                2                            (16)

2.    That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3.    That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

4.    That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

J.    Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

K.    Premium

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

L.    Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

M.    Separation of **Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1.    As if each **Named Insured** were the only **Named Insured**; and

2.    Separately to each **Insured** against whom claim is made or **Suit** brought.

N.    Subrogation

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

**NOTICE:**    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

At our request, the **Insured** will bring suit or transfer those rights to us and help us enforce them.

Any recoveries shall be applied first to any **Insured** that have paid an amount in excess of our payment under

57697 (6/93)                        2      *Archive Copy*                    (18)

2.  We then will be reimbursed up to the amount we have paid; and

3.  Lastly, any interests, including the **Insured**, over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured**, in the ratio of their respective recoveries as finally settled.

**O.    Transfer Of Your Rights And Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P.    When Loss Is Payable**

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** the amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured.**

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

*Elizabeth M. Tuck*
SECRETARY

*[signature]*
PRESIDENT

**NOTICE:**    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
57697 (6/93)    2 A13909    *Archive Copy*    (15)

## SCHEDULE OF UNDERLYING INSURANCE

Issued to:

MECHANICAL DYNAMICS & ANALYSIS INC

Policy Number:

BE    1399693

By:

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | TBD<br>TBD<br>12/31/02<br>12/31/03 | $1,000,000<br>EACH OCCURRENCE<br>$2,000,000<br>GENERAL AGGREGATE<br>$2,000,000<br>PRODUCTS/C. OPS. AGGREGATE<br>$1,000,000<br>PERSONAL & ADVERTISING INJURY |
| AUTO LIABILITY | CNA<br>TBD<br>12/31/02<br>12/31/03 | $1,000,000<br>COMBINED SINGLE LIMIT |
| EMPLOYERS LIABILITY | AIG<br>TBD<br>12/31/02<br>12/31/03 | $1,000,000<br>EACH ACCIDENT<br>$1,000,000<br>DISEASE EACH EMPLOYEE<br>$1,000,000<br>DISEASE POLICY LIMIT |

_____

AUTHORIZED REPRESENTATIVE

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
AH0006    2/2000
65115 5/99    Archive Copy

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceeding the Act of Terrorism.

Coverage for Acts of Terrorism for losses is already included in your current policy. The portion of your annual premium that is attributable to coverage for Acts of Terrorism covered by the Act is $ INCL..

BE    1399693
Policy #

0008
Division #

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
Insurance Carrier

MECHANICAL DYNAMICS & ANALYSIS INC
Insured Name

Signature of Insured

Print Name / Title

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

81249 (12/02)          2   43000
AH0099                      *Archive Copy*

ENDORSEMENT No. 1

**This endorsement, effective 12:01 AM:** December 31, 2002

**Forms a part of policy no.:** BE    1399693

**Issued to:** MECHANICAL DYNAMICS & ANALYSIS INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## CONTRACTOR'S ENDORSEMENT

### Excluded Hazards

This insurance does not apply to:

1.  **Property Damage** to any property or equipment leased by the **Insured**;

2.  **Property Damage** to property being installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**;

3.  **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan; or

4.  **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

## Following Form Hazards

It is further agreed that this insurance does not apply to:

1.  **Property Damage** arising out of:

    a.  Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

    b.  The collapse of or structural injury to any building or structure due to:

        1)  the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

        2)  the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof, or

    c.  Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

2.  Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

NOTICE THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57707 (6/93)        2 of 2

_Archive Copy_

_____

**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 2

**This endorsement, effective 12:01 AM:** December 31, 2002

**Forms a part of policy no.:** BE    1399693

**Issued to:** MECHANICAL DYNAMICS & ANALYSIS INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Commercial Umbrella Policy

**CrisisResponse℠ and Excess Casualty CrisisFund℠**

**(Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance)**

### Additional Declarations

**Item 1. CrisisResponse Sublimit of Insurance:** $250,000 — **Each Crisis Management Event And Aggregate**

**Item 2. Crisis Management Limit of Insurance:** $ 50,000 — **Each Crisis Management Event And Aggregate**

**Item 3. Premium:** INCLUDED

This policy is amended to provide for Advancement of **CrisisResponse** Costs during a **Crisis Management Event** and Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

| I. | INSURING AGREEMENTS-CrisisResponse and Excess Casualty CrisisFund |

The following insuring agreements section is added to this policy for the purpose of the coverage provided by this endorsement:

**A. Advancement of CrisisResponse Costs during a Crisis Management Event**

We will advance on behalf of the **Named Insured CrisisResponse Costs** that may be associated with damages covered by this policy arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **CrisisResponse Sublimit of Insurance.**

We will advance **CrisisResponse Costs** that may be associated with damages covered by this policy directly to third parties.

**B. Crisis Communications Management Insurance**

We will pay on behalf of the **Named Insured Crisis Management Loss** arising from a **Crisis Management Event first commencing** during the Policy Period, up to the amount of the **Crisis Management Limit of Insurance.**

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

74641 (12/99)    2    1999 American International Group, Inc.    Page 1 of 5

C.    A **Crisis Management Event** shall first commence at the time during the **Policy Period** when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and shall end at the earliest of the time when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

D.    There shall be no **Retained Limit** applicable to **CrisisResponse Costs** or **Crisis Management Loss**. We shall pay such **CrisisResponse Costs** or **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

## II.    LIMITS OF INSURANCE

The following provisions are added to Section III. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A.    The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the **Policy Period**. This **CrisisResponse Sublimit of Insurance** shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B.    The **Crisis Management Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **Crisis Management Limit of Insurance** shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C.    We will have no obligation to advance **CrisisResponse Costs** or to pay **Crisis Management Loss** from the earliest of the time when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

## III.    DEFINITIONS

The following definitions are added to Section IV. Definitions for the purpose of the coverage provided by this endorsement:

A.    **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has reasonably been associated with or may be associated with:

   1.    damages covered by this policy that are in excess of the **Retained Limit** applicable to such damages; and

   2.    significant adverse regional or national media coverage.

**Crisis Management Event** shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B.    **Crisis Management Firm** means any public relations firm or crisis management firm approved by us that is hired by the **Named Insured** to perform **Crisis Management Services** in connection with a **Crisis Management Event**. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the **Named Insured** without further approval by us.

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

74641 (12/99)          2          1999 American International Group, Inc.          Page 2 of 5

C.  **Crisis Management Limit of Insurance** means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D.  **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event:**

1.  Amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event;** and

2.  Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event.**

E.  **Crisis Management Service** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured.**

F.  **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event,** provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1.  Medical expenses;

2.  Funeral expenses;

3.  Psychological counseling;

4.  Travel expenses;

5.  Temporary living expenses;

6.  Expenses to secure the scene of a **Crisis Management Event;** and

7.  Any other expenses pre-approved by the Company.

**CrisisResponse Costs** will not include defense costs or **Crisis Management Loss.**

G.  **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H.  **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

| IV.  **EXCLUSIONS** |

The following exclusions are added to Section V. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance does not apply to any CrisisResponse Costs or Crisis Management Loss in connection with a **Crisis Management Event:**

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

74641 (12/99)      2      1999 American International Group, Inc.                    Page 3 of 5

A.    arising out of, based upon or attributable to the acts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B.    arising out of, based upon or attributable to any pending or prior crisis, claim, or **Suit** as of the inception date of this policy;

C.    arising directly or indirectly out of:

1.    any actual or alleged failure, malfunction or inadequacy of:

a.    any of the following, whether belonging to any **Named Insured** or to others:

(1)    computer hardware, including microprocessors;

(2)    computer application software;

(3)    computer operating systems and related software;

(4)    computer networks;

(5)    microprocessors (computer chips) not part of any computer system; or

(6)    any other computerized or electronic equipment or components; or

b.    any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph C1a of this exclusion

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

2.    any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the **Insured** to determine, rectify or test for any potential or actual problems described in Paragraph C1 of this exclusion.

---

| V. | CONDITIONS |
|---|---|

The following conditions are added to Section VI. Conditions for the purpose of the coverage provided by this endorsement:

A.    You must report any **Crisis Management Event** to us within twenty-four (24) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

2. ~~the nature of the~~ **Crisis Management Event** is taking or took place;

2. ~~the names and addresses of any~~ injured persons and any witnesses; and

~~the nature of any~~ injury or damage arising out of the Crisis

**NOTICE:** THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

74641 (12/99)    2    Archive Copy 1999 American International Group, Inc.    Page 4 of 5

Written notice should be mailed or delivered to:

AIG Excess Casualty Claim Department
70 Pine Street
New York, NY 10270

B.   There shall be no requirement that you obtain prior written approval from us before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by you to perform the **Crisis Management Services** has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.   Any payments for **Crisis Management Loss** or advancement of **CrisisResponse Costs** that we make under this endorsement:

    1.   shall not be deemed to be a determination of the **Insured's** liability with respect to any claim or **Suit** that results from a **Crisis Management Event**; and

    2.   shall not create any duty to defend any **Suit** or to investigate any claim arising from a **Crisis Management Event**, nor any coverage obligations under this policy.

D.   If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.   In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event** has occurred, the **Named Insured** may, at its own cost, retain the services of an approved **Crisis Management Firm** and/or advance **CrisisResponse Costs**. Provided, however, if the **Named Insured** elects to retain an approved **Crisis Management Firm** or to advance **CrisisReponse Costs**, we shall have no obligation to reimburse under this endorsement the **Named Insured** for such costs or expenses. The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

Authorized Representative
or countersignature (in states where applicable)

74641 (12/99)    2    ©1999 American International Group, Inc.



**AIG Excess Casualty**®

### Excess Casualty CrisisFund®
#### (Crisis Communications Management Insurance)

#### *Approved Crisis Management Firms*
#### *as of May 1, 2002*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Abernathy MacGregor Group** | | |
| <u>New York Office</u><br>501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Cell (917) 912-6378 |
| <u>Los Angeles Office</u><br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443 | *Emergency Only*<br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |
| **Citigate Sard Verbinnen** | | |
| <u>New York Office</u><br>630 Third Avenue<br>New York, NY 1 0017 | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344 | *Emergency Only*<br>Contact switchboard @<br>(212) 687-8080 |
| | <u>Citigate Sard Verbinnen web address:</u><br>www.sardverb.com | |
| | Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344 | |
| | <u>Citigate Sard Verbinnen web ad dress:</u><br>www.sardverb.com | |
| **Hill & Knowlton** | | |
| <u>New York Office</u><br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017 | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570 | *Emergency Only*<br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |
| | Arthur Forster<br>Tel. (212) 885-0442<br>Cell: (908) 337-6853<br>Fax: (212) 885-0570<br>aforster@hillandknowlton.com | |

**NOTICE:** THESE POLICY FORMS AND APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AH0559          2 of 3 *Archive Copy*          Page    of 3

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

### Hill & Knowlton Continued

**Additional United States/Canada Offices:**
Atlanta; Austin; Calgary; Chicago; Detroit; Ft. Lauderdale; Houston; Irvin e; Los Angeles; Montreal; Ottawa; Portland; Quebec City; Sacramento; San Francisco; San Juan; Seattle; Tampa; Toronto; Vancouver; Washington, D.C.

**International Offices:**
**Latin America:** Bogota; Buenos Aires; Caracas; Mexico City; Sao Paulo; Santiago; Guatemala
**Europe, Middle East, Africa:** Amsterdam; Aschaffenburg; Athens; Barcelona; Berlin; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Rome; Stockholm; Tallinn; Warsaw
**Asia Pacific:** Auckland; Bangkok; Beijing; Canberra; Hong Kong; Kuala Lumpur; Melbourne; Seoul; Shanghai; Singapore; Sydney; Tokyo; Wellington

---

### Lexicon Communications Corp.

| | | |
|---|---|---|
| <u>Los Angeles Office</u><br>9200 Sunset Blvd.<br>Suite 1203<br>Los Angeles, CA 90069 | Steven B. Fink<br>Tel. (213) 346-1212<br>Cell (626) 253-1519<br>sfink<br><u>Lexicon Comm web address:</u><br>www.crisismanagement.com | **Emergency Only**<br>Contact switchboard @<br>(213) 346-1200, ext. 225 |

---

### PR21 (A Division of Edelman Worldwide)

| | | |
|---|---|---|
| <u>New York Office</u><br>79 Fifth Avenue, 17th Fl.<br>New York, NY 10003 | Jon Goldberg<br>Tel. (212) 299-8952<br>Fax (212) 462-1026/7 | **Emergency Only**<br>Cell (973) 699-7148<br>Pager (877) 386-8115 |

**Additional United States/Canada Offices:**
Atlanta; Austin; Chicago; Dallas; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.

**International Offices:**
**Latin America:** Buenos Aires; Mexico City; Sao Paulo
**Europe:** Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris
**Asia Pacific:** Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei

---

### Robinson Lerer & Montgomery

| | | |
|---|---|---|
| <u>New York Office</u><br>75 Rockefeller Plaza<br>6th Floor<br>New York, NY 10019 | Michael J. Gross<br>Tel. (212) 484-7721<br>Cell (917) 853-0620<br>Fax (212) 484-7411<br>mgross52@aol.com | **Emergency Only**<br>Contact switchboard @<br>(212) 484-6100 |

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AH0559          2  /13006     *Archive Copy*          Page    of 3

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Sitrick and Company Inc.** | | |
| <u>Los Angeles Office</u><br>2029 Century Park East<br>Suite 1750<br>Los Angeles, CA 90067 | Michael S. Sitrick<br>Tel. (310) 788-2850<br>Cell (310) 788-2855 | *Emergency Only*<br>(310) 358-1011<br>24 hours/7 days |

Additional United States Offices:  New York and Washington, D.C.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AH0559                    2  /13/2006          *Archive Copy*          Page 3 of 3

ENDORSEMENT No. 3

**This endorsement, effective 12:01 AM:** December 31, 2002

**Forms a part of policy no.:** BE     1399693

**Issued to:** MECHANICAL DYNAMICS & ANALYSIS INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## <u>NOTICE OF OCCURRENCE ENDORSEMENT</u>

Your failure to give first report of a claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such **Occurrence** to us within a reasonable time once you become aware of such error.

All other terms, conditions and exclusions remain the same.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
82223 (3/95)          2   Archive Copy
HO274

_____

**AUTHORIZED REPRESENTATIVE**

# EXHIBIT D

ENDORSEMENT No. 4

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.:  BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### KNOWLEDGE OF OCCURRENCE ENDORSEMENT

As respects any loss reporting requirements under this policy, it is understood and agreed that knowledge of an accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours shall have received notice from said agent, servant, employee or any other person.

All other terms, conditions and exclusions remain the same.

**NOTICE:**  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

82224 (3/95)    2 413998
H0275                    *Archive Copy*

_____

**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.:  BE     1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## COMMERCIAL UMBRELLA

## NEW YORK AMENDATORY ENDORSEMENT

In Section VI, Conditions, Condition D, Cancellation, is hereby deleted in its entirety and replaced by the following:

D.     Cancellation, Nonrenewal And Conditional Renewal By Us.

1.     You may cancel the policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect. The policy period will end on the day and hour stated in such notice or on the day and hour of surrender.

2.     New policies in effect for sixty (60) days or less.

We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you and your authorized insurance agent or broker not less than fifteen (15) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you and your authorized insurance agent or broker not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice. Notice shall specify the grounds for cancellation.

3.     New policies in effect for more than sixty (60) days and any renewal policy.

This policy may be cancelled by us by mailing or delivering to you and to your authorized insurance agent or broker, written notice stating when not less than fifteen (15) days thereafter the cancellation shall be effective; however, such cancellation must be based on one or more of the following:

a.     nonpayment of premium;

b.     conviction of a crime arising out of acts increasing the hazard insured against;

c.     discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

d.     after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

e.     material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

f.     determination by the New York Superintendent of Insurance that the continuation of our present premium volume would jeopardize our solvency or be hazardous to the interests of our Insureds, our creditors or the public;

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT PURSUANT TO THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

60593 (06/94)          2          Archive Copy               Page     of 3

g. a determination by the New York Superintendent of Insurance that the continuation of the policy would violate, or would place us in violation of, any provision of the New York Insurance Law;

h. revocation or suspension of an **Insured's** license to practice his profession; or

i. where we have reason to believe that there is a probable risk or danger that you will destroy or permit the destruction of the insured property for the purpose of collecting the insurance proceeds, provided, however, that:

    1) a notice of cancellation on this ground shall inform you in plain language that you must act within ten days if review by the department of the ground for cancellation is desired pursuant to item (3) of this subparagraph i.;

    2) notice of cancellation on this ground shall be provided simultaneously by us to the department; and

    3) upon your written request made to the department within ten days from your receipt of notice of cancellation on this ground, the department shall undertake a review of the ground for cancellation to determine whether or not we have satisfied the criteria for cancellation specified in this subparagraph; if after such review the department finds no sufficient cause for cancellation on this ground, the notice of cancellation on this ground shall be deemed null and void.

Our notice of cancellation shall specify the grounds for cancellation.

4. The policy period will end on the day and hour stated in the cancellation notice.

5. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

6. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

7. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8. The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

9. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

10. We shall mail to you and to your authorized insurance agent or broker, written notice indicating our intention:

    a. not to renew this policy;

**NOTICE:** THE FORMS AND THEIR APPLICABLE RATES ARE EXEMPT FROM THE REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

... change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of exclusions or upon increased premium rate not based upon change in coverage or increased exposure units or as a result of experience rating, loss ...

60593 (06/94)    2    Page 2 of 3

c.  that the policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice must be mailed or delivered on a timely basis and advise you that a second notice shall be mailed at a later date indicating our intention as specified in subparagraph a. or b. of this paragraph 10. and that coverage shall continue on the same terms, conditions and rates as expiring, until the later of the expiration date or sixty (60) days after the second notice is mailed or delivered; such alternative renewal notice also shall advise you of the availability of loss information and, upon written request, we shall furnish such loss information within twenty days to you.

11.  A nonrenewal notice as specified in subparagraph a., a conditional renewal notice as specified in subparagraph b., and the second notice described in subparagraph c. of paragraph 10. shall contain the specific reason or reasons for nonrenewal or conditional renewal, and set forth the amount of any premium increase and nature of any other proposed changes.

12.  The notice required by paragraph 10. shall be mailed at least sixty (60) but not more than one hundred twenty (120) days in advance of the end of the policy period.

13.  If we employ an alternative renewal notice as authorized by subparagraph c. of paragraph 10. we shall provide coverage on the same terms, conditions, and rates as the expiring policy, until the later of the expiration date of sixty (60) days after the mailing of the second notice described in such subparagraph.

14.  Prior to the expiration date of this policy, in the event that an incomplete or late conditional renewal notice or a late nonrenewal notice is provided by us, the policy period shall be extended, at the same terms and conditions as the expiring policy and at the lower of the current rates or the prior period's rates, until sixty (60) days after such notice is mailed, unless you elect to cancel sooner.

15.  In the event that a late conditional renewal notice or a late nonrenewal notice is provided by us on or after the expiration date of the policy, coverage shall remain in effect on the same terms and conditions of the expiring policy for another required policy period, and at the lower of the current rates or the prior period's rates unless you during the additional required policy period have replaced the coverage or elect to cancel, in which event such cancellation shall be on a pro rata premium basis.

16.  Nothing herein shall be construed to limit the grounds for which we may lawfully rescind this policy or decline to pay a claim under this policy.

17.  Notice required herein to be mailed to you shall be mailed to you at the address shown in Item 1 of the Declarations.

18.  Notice required herein to be mailed by us shall be sent by registered, certified or other first class mail. Delivery of written notice shall be equivalent to mailing.

19.  Proof of mailing of such notice as aforesaid shall be sufficient proof of notice. The policy period shall terminate at the effective date and hour of cancellation or nonrenewal specified in such notice.

All other terms and conditions of this policy remain unchanged.

**NOTICE:**  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

60593 (06/94)    2 A13008    Page 2 of 3

**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 6

**This endorsement, effective 12:01 AM:**  December 31, 2002

**Forms a part of policy no.:** BE    1399693

**Issued to:**  MECHANICAL DYNAMICS & ANALYSIS INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## <u>AUTOMOBILE LIABILITY FOLLOW-FORM ENDORSEMENT</u>

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any **auto**.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

**NOTICE** All other terms and conditions of this policy remain unchanged.
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
60446 (5/94)      2  413996

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 7

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.:  BE    1399693

Issued to:   MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## EMPLOYEE BENEFITS LIABILITY FOLLOW-FORM ENDORSEMENT
### (CLAIMS MADE VERSION 2)

### PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any negligent act, error or omission of the **Insured** or of any other person for whom the **Insured** is legally liable in the administration of the **Insured's Employee Benefit Programs** as defined herein.

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.      This exclusion shall not apply;

2.      The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance; and

3.      Solely as respects this endorsement, we will only provide coverage for a claim made against the **Insured** during our policy period.

        If the insurance provided by the policy listed in the Schedule of Underlying Insurance provides coverage for **Occurrences** occurring on or after a specified Retroactive Date or for claims made during an Extended Reporting Period, the insurance provided by our policy will also provide such coverage.

For the purposes of this endorsement, the following definitions apply:

1.      Employee Benefit Programs shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Profit Sharing Plans, Employee Stock Subscription Plans, Worker's Compensation, Unemployment Insurance, Social Security and Disability Benefits.

2.      Administration shall mean:

        a.      Giving counsel to employees with respect to Employee Benefit Programs;

        b.      Interpreting Employee Benefit Programs;

        c.      Handling of records in connection with Employee Benefit Programs; or

        d.      Effecting enrollment, termination or cancellation of employees under Employee Benefit Programs;

        provided all such acts are authorized by you.

**NOTICE** All other terms and conditions of this policy remain unchanged.
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
62081 (2/95)        2  1399693        *Archive Copy*

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 8

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.:  BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## ARCHITECTS AND ENGINEERS ERRORS AND OMISSIONS EXCLUSION

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the rendering of, or the failure to render, professional services or any error, omission or mistake of a professional nature performed by or on behalf of the **Insured**, including but not limited to:

1.    The preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications; and

2.    Supervisory, inspection or engineering services.

All other terms and conditions of this policy remain unchanged.

**NOTICE:**    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
57698 (6/93)      2  A13996      Archive Copy

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 9

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.: BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### FOREIGN LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that occurs outside the United States of America, its territories or possessions or Canada.

All other terms, conditions and exclusions remain the same.

**NOTICE:**    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
0419 (5/94)            2 Archive Copy
119160

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 10

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.: BE     1399693

Issued to:   MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### CROSS SUITS EXCLUSION

This insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of any injuries initiated, alleged, or caused to be brought about by a **Named Insured** covered by this policy against any other **Named Insured** covered by this policy.

**NOTICE:** All other terms and conditions of this policy remain unchanged. APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

60441 (5/94)          2  Archive Copy

_____
AUTHORIZED REPRESENTATIVE

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM: December 31, 2002

Forms a part of policy no.: BE    1399693

Issued to:   MECHANICAL DYNAMICS & ANALYSIS INC

By:   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## FAILURE TO SUPPLY EXCLUSION

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the complete or partial failure to supply electricity, gas or water.

All other terms, conditions and exclusions remain the same.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

60456 (5/94)
H0201        2    413006    Archive Copy

**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 12

**This endorsement, effective 12:01 AM:** December 31, 2002

**Forms a part of policy no.:** BE    1399693

**Issued to:** MECHANICAL DYNAMICS & ANALYSIS INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

<u>**LEAD EXCLUSION**</u>

This insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury**, **Advertising Injury** or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to lead in any form or products containing lead.

NOTICE: All other terms and conditions of this policy remain unchanged.
APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
61718 (12/94)        2    Archive Copy

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 13

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no:  BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## COMMERCIAL UMBRELLA POLICY

### FUNGUS EXCLUSION

Section V. Exclusions is amended by adding the following exclusion to the policy:

This insurance does not apply to **bodily injury, property damage, personal injury, advertising injury** or any other loss, injury, damage, cost or expense, including but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.  Any "fungus(i)", "molds(s)", mildew or yeast, or

    b.  Any "spore(s)" or toxins created or produced by or emanating from such fungus(I), mold(s), mildew or yeast, or

    c.  Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

    d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury ,damage, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

    "Fungus(i)" includes, but is not limited to, Any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts  and mushrooms.

    "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

    "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)', mildew, plants, organisms or microorganisms.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

_____
**Authorized Representative**

78091 (08/04)          2
AH0829                      Archive Copy

ENDORSEMENT No. 14

**This endorsement, effective 12:01 AM:** December 31, 2002

**Forms a part of policy no.:** BE    1399693

**Issued to:**  MECHANICAL DYNAMICS & ANALYSIS INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### MARINE LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of any marine liability which includes but is not limited to the following:

Charterers Liability
Safe Berth Legal Liability
Stevedores Liability
Towers Liability
Jones Act Coverage
Ship Repairers Legal Liability

Terminal Operation Liability
Wharfingers Liability
Protection and Indemnity including Collision
Ship Builders Liability
U.S. Longshoreman and Harbor Workers

It is further agreed that this insurance does not apply to:

1.    **Bodily Injury** or **Property Damage** arising out of the maintenance, fueling, loading or unloading of any watercraft or **Property Damage** to any watercraft in the **Insured's** care, custody or control;

2.    **Bodily Injury** to passengers or **Property Damage** to property of passengers;

3.    **Property Damage** to any dock, pier, harbor, bridge, buoy, lighthouse, breakwater structure, beacon, cable or to any fixed or movable object or property for which the **Insured** may be held liable; or

4.    The cost or expense of, or incidental to, the removal of the wreck of any vessel.

NOTICE: All other terms and conditions of this policy remain unchanged.
THESE FORMS AND RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
60468 (5/94)        2 1399693    Archive Copy

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 15

**This endorsement, effective 12:01 AM:**  December 31, 2002

**Forms a part of policy no:  BE     1399693**

**Issued to:**  MECHANICAL DYNAMICS & ANALYSIS INC

**By:**  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**Commercial Umbrella Policy Form**

**MTBE and Other Fuel Oxygenates Exclusion**

This policy is amended as follows:

Section V Exclusions is amended to include the following additional exclusion:

This insurance does not apply to:

**Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of  methyl tertiary-butyl ether (MTBE) and other fuel oxygenates including, but not limited to, the following:

1.  Ether oxygenates, such as ethyl tertiary-butyl ether (ETBE), tertiary-amyl methyl ether (TAME), tertiary-amyl ethyl ether (TAEE), diisopropyl ether (DIPE), and  dimethyl ether (DME); and

2.  Alcohol oxygenates, such as ethanol (ethyl alcohol), methanol (methyl alcohol), and tertiary-butyl alcohol (TBA).

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion shall supercede.

All other terms and conditions of this policy remain unchanged.

**NOTICE:**    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

79153 (09/01)
AH0821              2  A13000
*Archive Copy*

**Authorized Representative**

ENDORSEMENT No. 16

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.: BE     1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## RADIOACTIVE MATERIAL OR EQUIPMENT EXCLUSION

This insurance does not apply to any **Bodily Injury** or **Property Damage** arising out of the **Insured's** selling, disposing of or handling any radioactive material or equipment.

All other terms and conditions of this policy remain unchanged.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

57838 (6/93)         2   413900

_Archive Copy_

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 17

**This endorsement, effective 12:01 AM:** December 31, 2002

**Forms a part of policy no.:** BE    1399693

**Issued to:** MECHANICAL DYNAMICS & ANALYSIS INC

**By:** NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## PROFESSIONAL LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

All other terms and conditions of this policy remain unchanged.

NOTICE THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

60458 (5/94)          2    Archive Copy

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 18

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.: BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## UNDERGROUND STORAGE TANK EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury, Advertising Injury** or any other loss, costs or expenses arising out of the ownership, maintenance, use or operation of any "underground storage tank".

For the purposes of this endorsement, "underground storage tank" means any tank, including associated underground piping connected to the tank, that has at least ten (10) percent of its volume below ground.

All other terms and conditions of this policy remain unchanged.

**NOTICE:**  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
71277 (7/98)       2 A13008ve Copy

AUTHORIZED REPRESENTATIVE

ENDORSEMENT No. 19

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.: BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### SUBSIDENCE EXCLUSION

This insurance does not apply to any damages directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other movements of land or earth; if any of the foregoing emanates from, or is attributable to, any operations of the Insured.

It is further agreed that this insurance does not apply to any damages arising out of any act of direct condemnation of property or exercise of power of eminent domain by the Insured, any act by the Insured of inverse condemnation, any taking of property by the Insured which is compensable under the Fifth or Fourteenth Amendments to the United States Constitution, or any taking of property by the Insured which is compensable under the Constitution of the State in which the claim is made.

All other terms and conditions of this policy remain unchanged.

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
57725 (6/93)      2 Archive Copy

AUTHORIZED REPRESENTATIVE

ENDORSEMENT No. 20

This endorsement, effective 12:01 AM: December 31, 2002

Forms a part of policy no.: BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### TOTAL POLLUTION EXCLUSION

In Section V, Exclusions, Exclusion M. is hereby deleted in its entirety and replaced by the following:

M.    1.    **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2.    Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3.    Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

NOTICE: All terms and conditions of this policy remain unchanged.

NOTICE: THIS POLICY CONTAINS FORMS WHOSE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

62221 (03/95)        2 413998

Archive Copy

_____
**AUTHORIZED REPRESENTATIVE**

ENDORSEMENT No. 21

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.: BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## NEW HAMPSHIRE UNINSURED MOTORISTS COVERAGE*

### OPTION FORM

I.    In keeping with the provisions of the laws of my state, I have been offered the opportunity to:

    1.    Elect a limit of coverage which is equal to the Limits of Insurance on this policy.

    2.    Completely reject Uninsured Motorists coverage on this policy.

II.    I hereby indicate my choice below.

    In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal. The same applies to **Property Damage** but only if Uninsured Motorists **Property Damage** is included under state law and only if increased limits for Uninsured Motorists **Property Damage** are available.

    1.  ☐  Coverage desired at a limit equal to the Limits of Insurance.

    2.  ☐  Uninsured Motorists coverage rejected in its entirety for **Bodily Injury** and **Property Damage**. This rejection shall be binding upon every **Insured** and shall apply to this policy and to all renewal or policy replacements.

    \*    The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.


_____

Signature of Applicant or Named Insured


_____

Date

**NOTICE:**    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

62413 (4/95)        2  413906  *Archive Copy*        Page    of 2

It is agreed that if the **Insured** has chosen to elect Uninsured Motorists coverage, in Section V, Exclusions, Exclusion C is hereby deleted in its entirety and replaced by the following:

C.    Any obligations of the **Insured** under a "No-Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

All other terms and conditions of this policy remain unchanged.

NOTICE: APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.
Archive Copy

62413 (4/95)    2    Page 2 of 2

AUTHORIZED REPRESENTATIVE

### ENDORSEMENT No. 22

This endorsement, effective 12:01 AM:  December 31, 2002

Forms a part of policy no.:  BE    1399693

Issued to:  MECHANICAL DYNAMICS & ANALYSIS INC

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### COMMERCIAL UMBRELLA

### VERMONT UNINSURED MOTORISTS COVERAGE*

Exclusion C of this policy is hereby deleted in its entirety and replaced by the following:

C.    Any obligation of the **Insured** under a "No Fault" law.

It is further agreed that this insurance does not apply to Uninsured Motorists Coverage unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

### OPTION FORM

I.    In keeping with the provisions of the laws of Vermont, I have been offered the opportunity to:

   1.    Elect a limit of **Bodily Injury** Uninsured Motorists coverage which is equal to the Limits of Insurance on this policy.

   2.    Elect a limit of **Bodily Injury** Uninsured Motorists coverage which is lower than the Limits of Insurance on this policy.

   In both of the above options, the **Property Damage** Uninsured Motorists Limit under this policy shall be $10,000.

II.    I hereby indicate my choice below (1 or 2).

   In order to consider Uninsured Motorists coverage for this policy, the **Bodily Injury** Uninsured Motorists and Liability limits of your primary policy must be equal and the **Property Damage** Uninsured Motorists limit on your primary policy must be $10,000. If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

   1.  ( ) Coverage desired at a **Bodily Injury** limit equal to the Limits of Insurance.

   2.  ( ) Coverage desired at a **Bodily Injury** limit lower than the Limits of Insurance.

      LIMIT  OPTIONS

      ( )

**NOTICE:**  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

59264 (05/94)        2 43909e Copy              Page  of 2

III.    Solely as respects the coverage provided by this endorsement, Exclusion D. 1 is deleted.

*The term Uninsured Motorists includes Underinsured Motorists when and to the extent provided by the primary policy.

For any change in coverage or limit, please notify us or your agent in writing.

_____

Signature of Applicant or Named Insured

NOTICE  All terms and conditions of the policy remain unchanged.
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

59264 (05/94)         2                                    Page 2 of 2

_____

AUTHORIZED REPRESENTATIVE

# EXHIBIT E

1   RICHARD K. MAHRLE (AZ #005166)
    **GAMMAGE & BURNHAM**
2   A PROFESSIONAL LIMITED LIABILITY COMPANY
    ATTORNEYS AT LAW
    TWO NORTH CENTRAL AVENUE - 18TH FLOOR
3   PHOENIX, ARIZONA 85004
    TELEPHONE (602) 256-0566
4   ATTORNEYS FOR PLAINTIFFS

5   DAVID E. BOCAN (CA #114657)
    BRENT L. REICHERT (MN #144630)
6   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
    2800 LA SALLE PLAZA
7   800 LA SALLE AVENUE SOUTH
    MINNEAPOLIS, MINNESOTA 55402
    TELEPHONE (612) 349-8500
8   ATTORNEYS FOR PLAINTIFFS ARIZONA PUBLIC SERVICE COMPANY;
    HARTFORD STEAM BOILER INSPECTION AND INSURANCE CO.;
9   ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD.;
    LIBERTY INSURANCE UNDERWRITERS INC.; ENERGY
10  INSURANCE MUTUAL LIMITED; AND UNDERWRITERS AT LLOYD'S OF
    LONDON SYNDICATE #1225, SUBSCRIBING TO POLICY DG 218102

11
    ROBERT E. WILENS (IL #6204754)
12  **CLAUSEN MILLER P.C.**
    10 SOUTH LA SALLE STREET, SUITE 1600
13  CHICAGO, ILLINOIS 60603
    TELEPHONE (312) 855-1010
14  ATTORNEYS FOR PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY

15              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

16                 IN AND FOR THE COUNTY OF MARICOPA

17  ARIZONA PUBLIC SERVICE COMPANY, an          NO. C V 2 0 0 5 - 0 0 5 7 4 0
18  Arizona corporation; HARTFORD STEAM
    BOILER INSPECTION AND INSURANCE CO.,         **COMPLAINT FOR**
19  a Connecticut corporation; ASSOCIATED
    ELECTRIC & GAS INSURANCE SERVICES            [1]  STRICT LIABILITY;
20  LTD., a New York corporation; LIBERTY        [2]  NEGLIGENCE;
    INSURANCE UNDERWRITERS INC., a New           [3]  BREACH OF
21  York corporation; ENERGY INSURANCE                CONTRACT;
22  MUTUAL LIMITED, a corporation;               [4]  BREACH OF EXPRESS
    UNDERWRITERS AT LLOYD'S OF LONDON                  WARRANTY; AND
23  SYNDICATE #1225, SUBSCRIBING TO              [5]  BREACH OF IMPLIED
24  POLICY DG 218102, a corporation; and              WARRANTY
    ZURICH AMERICAN INSURANCE
25  COMPANY, a New York corporation,
26
                     Plaintiffs,

    280620v1                                                          4/7/2005

1    vs.

2    MECHANICAL DYNAMICS & ANALYSIS,
3    LLC, a Minnesota limited liability company; and
     DOES 1 THROUGH 50, inclusive,
4
                    Defendants.
5
6

7         Plaintiffs Arizona Public Service Company and its insurers and underwriters,

8    including Hartford Steam Boiler Inspection and Insurance Co., Associated Electric & Gas

9    Insurance Services Ltd., Liberty Insurance Underwriters Inc., Energy Insurance Mutual

10   Limited, and Underwriters at Lloyd's of London Syndicate #1225, Subscribing to Policy

11   DG 218102, as subrogees of Arizona Public Service Company, by and through its

12   attorneys Gammage & Burnham, P.L.C. and Robins, Kaplan, Miller & Ciresi L.L.P., in

13   their Complaint against Defendants Mechanical Dynamics & Analysis, LLC and DOES 1

14   through 50, state and allege their causes of action in the paragraphs listed below.

15        Additionally, Plaintiff insurance carrier Zurich American Insurance Company, as

16   insurer for and subrogee of Arizona Public Service Company, by and through its

17   attorneys, Gammage & Burnham, P.L.C. and Clausen Miller P.C., in its Complaint

18   against Defendants Mechanical Dynamics & Analysis, LLC and DOES 1 through 50,

19   states and alleges its causes of action in the Paragraphs listed below.

                              **PARTIES**
20
21        1.    Plaintiff ARIZONA PUBLIC SERVICE COMPANY ("APS") is an

22   Arizona corporation organized under the laws of the State of Arizona, with its principal

23   place of business in Phoenix, Arizona.  APS both generates and provides electrical power

24   to citizens of Arizona as well as to other consumers of electrical power outside the state.

25   The subject property and equipment at issue are located at APS's Cholla Power Plant in

26   Joseph City, Arizona.

1    2.    Plaintiff HARTFORD STEAM BOILER INSPECTION AND

2    INSURANCE CO. ("Hartford") is an insurance company organized as a corporation

3    under the laws of Connecticut, with its principal place of business in Hartford,

4    Connecticut.

5    3.    Plaintiff ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES

6    LTD. ("Associated") is an insurance company organized as a corporation under the laws

7    of New York, with its principal place of business in New York, New York.

8    4.    Plaintiff LIBERTY INSURANCE UNDERWRITERS INC. ("Liberty") is

9    an insurance company organized as a corporation under the laws of New York, with its

10    principal place of business in New York, New York.

11    5.    Plaintiff ENERGY INSURANCE MUTUAL LIMITED ("Energy") is a

12    mutual insurance company organized under the Companies Act under the laws of

13    Barbados, British West Indies, with its principal place of business in the United States in

14    Tampa, Florida.

15    6.    Plaintiff UNDERWRITERS AT LLOYD'S OF LONDON SYNDICATE

16    #1225, SUBSCRIBING TO POLICY DG 218102 ("Lloyd's") is a syndicate underwriter

17    organized under the laws of Great Britain, United Kingdom.

18    7.    Plaintiff ZURICH AMERICAN INSURANCE COMPANY ("ZAIC") is an

19    insurance company organized as a corporation under the laws of New York, with its

20    principal place of business in Schaumburg, Illinois.

21    8.    Plaintiffs Hartford, Associated, Liberty, Energy, Lloyd's and ZAIC,

22    (collectively "the Property Insurance Carriers") are all insurers and underwriters that

23    participated in quota share subscriptions, each for its own part and not one for the other,

24    severally and not jointly, with regard to the property insurance coverage for APS.

25    ///

26    ///

3

4/7/2005

280620v1

1    9.    Defendant MECHANICAL DYNAMICS & ANALYSIS, LLC ("MD&A")

2  purports to be a limited liability company organized under the laws of the State of

3  Minnesota with its principal place of business in the State of New York.  MD&A

4  transacted business in Arizona with APS.

5    10.    The true names or capacities, whether individual, corporate, associate, or

6  otherwise of Defendants DOES 1 through 50, and each of them, are unknown to Plaintiffs

7  who, therefore, sue said Defendants by such fictitious names.  Plaintiffs are informed and

8  believe and, upon such information and belief, allege that each of said defendants

9  designated herein as a DOE is responsible, in some manner, for the events and

10  happenings herein referred to, and that each DOE Defendant is liable for the damages

11  sustained.

12    11.    Plaintiffs are informed and believe that, at all times, each Defendant

13  designated as DOES 1 through 50 was the agent, servant, partner, employee, and/or joint

14  venturer of each of the remaining defendants, and in doing the things alleged, was acting

15  within the course and scope of said agency, service, employment, partnership, and/or

16  joint venture.  Said defendants are fully responsible under the law for all harm caused to

17  Plaintiffs by the acts of their agents, servant, partner, employee, and/or joint venturer, as

18  well as any and all acts or conduct for which their agents, servant, partner, employee,

19  and/or joint venturer would have been deemed liable to Plaintiffs.

20    12.    Plaintiffs are informed and believe that, at all times herein mentioned

21  defendants, and each of them, were the successors-in-interest of the other defendants

22  named herein.  Said defendants are fully responsible under the law for all harm caused by

23  the negligent acts of their predecessors, as well as any and all acts or conduct for which

24  their predecessors would have been deemed liable to plaintiffs.

### JURISDICTION AND VENUE

25

26    13.    This Court has jurisdiction over this matter.

4

4/7/2005

/ / /

14.    At all relevant times herein, MD&A was doing business in the State of Arizona with APS, which has its principal place of business in Maricopa County. Venue is proper.

## COMMON ALLEGATIONS

15.    APS's Property Insurance Carriers insured property and equipment owned by APS through their respective policy insuring agreements with APS. These insurance policies provided, among other things, coverage for physical loss or damage to property located at APS's Cholla Power Plant located in Joseph City, Arizona.

16.    On March 4, 2003, APS and MD&A entered into an agreement in which MD&A agreed to inspect, investigate, evaluate, make recommendations and provide parts, equipment, and services concerning the repair and maintenance needs of the Unit 3 generator at the Cholla Power Plant, owned by APS. In consideration of said parts, equipment, and services, APS agreed to pay MD&A an amount not to exceed $300,000. The parties memorialized the agreement in a Purchase Order, dated March 4, 2003, with attachments, and in the terms and conditions of an overall Master Agreement.

17.    During the investigation, inspection, evaluation and repair of the generator, MD&A performed a return-to-service high potential voltage test on the entire generator windings.    According to MD&A, the bottom stator bar failed the test.    MD&A determined that an insulation breakdown had occurred on the bottom bar in stator slot no. 6 at the turbine end of the generator. In order to repair this bottom bar, MD&A determined that the 17 top bars and the bottom bar had to be removed. Once the bottom bar was replaced, the top bars were replaced and/or refurbished and installed to complete the winding, including their series connections.

18.    In order for MD&A to perform the repair, replacement and maintenance work on the stator bars and stator windings and their series connections, APS issued

280620v1

5

4/7/2005

Change Notice No. 300238253 (the "Change Notice"). MD&A agreed to perform the repairs and maintenance to the stator bars and stator windings and their series connections in accordance with the terms of the Change Notice, Purchase Order, and Master Agreement. In consideration of said parts, equipment, and services, APS agreed to pay MD&A an amount not to exceed $455,000.

19.    Altogether, APS agreed to pay MD&A a combined total amount not to exceed $755,000 for the parts, equipment, and services contemplated in the Master Agreement, Purchase Order, and Change Notice.

20.    MD&A represented and warranted to APS in the Master Agreement, among other things, that it had the necessary experience and expertise to provide the parts, equipment, and services contemplated by the Master Agreement, Purchase Order and Change Notice.

21.    In fact, MD&A agreed to provide its "Best Efforts" in performing and completing the agreed upon tasks. More specifically, under Section 10 of the Master Agreement, entitled Performance Requirements, MD&A agreed, among other things, to:

a.    Use its "Best Efforts";

b.    Provide and use only equipment and materials sufficient to produce the quality and quantity of Services required;

c.    Provide suitably trained and skilled personnel and perform the Services in a safe manner in accordance with this Agreement; and

d.    Comply with all codes, standards, rules, and regulations applicable to the Services, whether adopted or enacted by APS or by any federal, state, or local body or regulatory agency having jurisdiction.

22.    The term "Best Efforts" is defined in the Master Agreement as:

Those efforts and resources that a skilled, competent, experienced and prudent contractor would use to perform and complete the requirements of this agreement and any

1   purchase agreement in a timely manner, exercising the degree
2   of skill and competence customarily required of a contractor
    performing similar work for the relevant industry in the
3   United States.

4       23.    Under Section 12.3 of the Master Agreement, MD&A also agreed as
5   follows:

6       [MD&A] shall perform the Services in a safe manner and
        shall at all times conduct all operations in a manner to avoid
7       risk of bodily harm to persons or damage to any property.
        [MD&A] shall promptly take all precautions that are
8       necessary and adequate against any conditions that involve a
        risk of bodily harm to persons or a risk of damage to any
9       property. [MD&A] shall continuously inspect its finished and
        incomplete Services, materials, and equipment to discover
10      any such conditions, and shall be solely responsible for
        discovery and correction of all such conditions.

11      24.    Under Section 16 of the Master Agreement, MD&A further agreed to
12  indemnify APS and APS's insurers from any and all losses and damages that APS and its
13  insurers may incur for any loss of, or damage to, APS property.

14      25.    Pursuant to Section 19 of the Master Agreement, MD&A also expressly
15  warranted, among other things, to APS that its work and all the equipment and materials
16  that it furnished and sold would be:

17      a.    Free from defects in materials and workmanship;

18      b.    Of the standard and quality generally recognized within the industry
19            and/or profession;

20      c.    New;

21      d.    Of first quality; and

22      e.    Suitable for the use intended.

23      26.    Pursuant to Appendix A of the Purchase Order, MD&A also expressly
24  warranted, among other things, that MD&A shall have a thorough working knowledge
25  and be versed in repair methods for all requirements and shall maintain the original
26  equipment manufacturer's standards.

27.    On August 2, 2003, less than four months after MD&A provided said parts, equipment and services, the stator bars and stator windings and their series connections, and the Unit 3 generator at the Cholla Power Plant suffered a catastrophic internal stator winding failure, severely damaging the stator bars and stator windings and their series connections, the generator and other APS property including, but not limited to, the core iron, rotor, hydrogen cooling bundles, exciter and turbine.

28.    The costs incurred to repair the damage to the stator bars and stator windings and their series connection, the Unit 3 generator and other APS property exceeds $10,000,000.

29.    In addition, as a result of this catastrophic damage and failure of the stator bars and stator windings and their series connection and the Unit 3 generator, the generator at the APS Cholla Power Plant was out of service for more than 111 days. APS incurred substantial costs to replace the electrical power that should have been produced by the Unit 3 generator at the Cholla Power Plant but for the catastrophic generator failure and resulting damage.

30.    Pursuant to its insurance policies with the Property Insurance Carriers, APS made insurance claims seeking indemnification and reimbursement for the damages, extra expenses and losses resulting from the catastrophic failure of the stator bars and stator windings and their series connections and the Unit 3 generator, which had earlier been inspected, evaluated, repaired and maintained by MD&A. The Property Insurance Carriers paid and will pay for APS's property damages and losses, net of APS's deductible, pursuant to their insurance policies and APS's insurance claims arising out of this catastrophic failure and resulting damage.

31.    In consideration of the payments made and that will be made to APS by its Property Insurance Carriers, and pursuant to the insurance policies issued by the Property Insurance Carriers, these Property Insurance Carriers are bonafide subrogees of APS's

1   rights, claims and causes of action that it may have against any person or entity arising

2   out of the catastrophic damage to and failure of the stator bars and stator windings and

3   their series connections and the Unit 3 generator, including its claims against MD&A and

4   DOES 1 through 50. As bonafide subrogees of APS, the Property Insurance Carriers

5   commence this lawsuit against MD&A and DOES 1 through 50 to recover the amount of

6   proceeds they paid and will pay to APS for the damaged property under their insurance

7   policies.

8        32.    Additionally, APS suffered and continues to suffer at least $2,500,000 in

9   unreimbursed property losses and damages and an additional substantial amount in lost

10   power and extra costs incurred by APS to replace the electrical power that should have

11   been produced but for the catastrophic failure and resulting damage. APS commences

12   this lawsuit against MD&A to recover at least $2,500,000 in unreimbursed property

13   losses and damages and an additional amount in lost electrical power and extra costs

14   incurred by APS.

15                   FIRST CAUSE OF ACTION

16       (For Strict Liability Against Defendants MD&A and DOES 1 through 50)

17        33.    Plaintiffs reallege the allegations of Paragraphs 1 through 32 herein as

18   Paragraph 33 of the First Cause of Action.

19        34.    The stator bars and stator windings and their series connections, and other

20   parts and equipment as designed, manufactured, supplied, replaced, refurbished, installed,

21   fabricated, and/or maintained by MD&A were unreasonably dangerous and defective in

22   light of their foreseeable and intended uses. More specifically, the stator bars and stator

23   windings and their series connections, and other parts and equipment were defective and

24   unreasonably dangerous for several reasons including, but not limited to, the following:

25

26

a.  A number of stator bars and stator windings and their series connections were not properly designed, manufactured, supplied, replaced, refurbished, installed, fabricated, and/or maintained;

b.  Improper gaps between the end winding groups and the cooling vent duct stack existed;

c.  The gaps between the end winding groups and the cooling vent duct stacks were not properly accounted for and the effects of the gaps were not properly considered;

d.  The original equipment manufacturer's standards for this generator and the stator bars and stator windings and their series connections, and other parts and equipment were not followed and ensured;

e.  There were no warnings about the dangerous deficiencies and propensities of the generator after MD&A designed, manufactured, supplied, replaced, refurbished, installed, fabricated and/or maintained the stator bars and stator windings and their series connections, and other parts and equipment; and

f.  The stator bars and stator windings and their series connections, and other parts and equipment were defective for additional reasons which will be discovered during this litigation.

35.  As a direct and proximate result of defects in the stator bars and stator windings and their series connections, and other parts and equipment, the stator bars and stator windings and series connections and the Unit 3 generator catastrophically failed on August 2, 2003. This catastrophic failure caused significant and severe damage to those items and other APS property, as well as additional related expenses and damages for lost electrical power for which MD&A is strictly liable.

36.    As a result of these defects in the stator bars and stator windings and their series connections, and other parts and equipment, the Property Insurance Carriers have suffered damages in the amount of proceeds that they paid and will pay to APS for the damaged property under their insurance policies, for which MD&A is strictly liable.

37.    As a result of the defects in the stator bars and stator windings and their series connections, and other parts and equipment, APS suffered and continues to suffer at least $2,500,000 in unreimbursed property losses and damages and an additional substantial amount in lost power and extra costs incurred by APS to replace the electrical power that should have been produced but for the catastrophic failure and resulting damage, for which MD&A is strictly liable.

## SECOND CAUSE OF ACTION

### (For Negligence Against Defendants MD&A and DOES 1 through 50)

38.    Plaintiffs reallege the allegations of Paragraphs 1 through 37 herein as Paragraph 38 of the Second Cause of Action.

39.    Before August 2, 2003, MD&A agreed to inspect, evaluate, repair and maintain the Unit 3 generator at APS's Cholla Power Plant in Joseph City, Arizona.

40.    At all relevant times, pursuant to the Master Agreement, Purchase Order and Change Notice, MD&A had a duty to have a thorough working knowledge and be versed in repair and maintenance methods for all requirements and to maintain the original equipment manufacturer's standards.

41.    At all relevant times, MD&A had a duty to use its "Best Efforts" as contracted to in the Master Agreement and/or those efforts and resources that a skilled, competent, experienced and prudent contractor would use to investigate, evaluate, recommend and perform the necessary repair and maintenance work to the generator and the stator bars and stator windings and their series connections located at APS's Cholla Power Plant.

280620v1                                                                4/7/2005

1   42.   MD&A breached its duty of care by one or more negligent acts or

2   omissions, including, but not limited to, the following:

3       a.   Failing to properly design, manufacture, supply, replace, refurbish,

4           install, fabricate and/or maintain a number of stator bars and stator

5           windings and their series connections, and other parts and

6           equipment;

7       b.   Improperly allowing gaps between the end winding groups and the

8           cooling vent duct stack;

9       c.   Failing to account for and/or consider the effects of the gaps between

10          the end winding groups and the vent duct stacks;

11      d.   Failing to maintain the original equipment manufacturer's standards

12          for the generator and the stator bars and stator windings and their

13          series connections;

14      e.   Violating industry standards for the evaluation and recommendations

15          for repair and maintenance of the generator, the stator bars and stator

16          windings and their series connections;

17      f.   Violating industry standards for the actual repair and maintenance of

18          the generator, the stator bars and stator windings and their series

19          connections;

20      g.   Failing to provide proper warnings about the dangerous deficiencies

21          and propensities of the generator, stator bars and stator windings and

22          their series connections, as repaired and maintained by MD&A; and

23      h.   Committing other negligent acts or omissions which will be

24          discovered during this litigation.

25  ///

26  ///

280620v1

4/1/2005

43.   The negligence of MD&A was a direct and proximate cause of the catastrophic failure of the stator bars and stator windings and their series connections, and the Unit 3 generator and the resulting damage to those items and other APS property that occurred on August 2, 2003.

44.   As a result of MD&A's negligence, the Property Insurance Carriers suffered damages in the amount of proceeds that they paid and will pay to APS for the damaged property under their insurance policies, for which MD&A is liable.

45.   As a result of MD&A's negligence, APS suffered and continues to suffer at least $2,500,000 in unreimbursed property losses and damages and an additional substantial amount in lost power and extra costs incurred by APS to replace the electrical power that should have been produced but for the catastrophic failure and resulting damage, for which MD&A is liable.

## THIRD CAUSE OF ACTION

### (For Breach of Contract Against Defendants MD&A and DOES 1 through 50)

46.   Plaintiffs reallege the allegations of Paragraphs 1 through 45 herein as Paragraph 46 of the Third Cause of Action.

47.   MD&A contracted with APS to inspect, investigate, evaluate, make recommendations, and provide parts, equipment and services concerning the repair and maintenance needs of the Unit 3 generator at the Cholla Power Plant owned by APS. In consideration of said services, APS agreed to pay MD&A an amount not to exceed $300,000.

48.   MD&A further contracted with APS to provide labor, equipment and materials to remove, replace, refurbish, repair and perform maintenance to the stator bars. In consideration of said parts, equipment and services, APS agreed to pay MD&A an amount not to exceed $455,000.

///

1    49.    APS fully performed its duties under the Master Agreement, Purchase
2    Order, and Change Notice.

3    50.    MD&A breached its contract with APS by certain acts or omissions
4    including, but not limited to, the following:

5        a.    Failing to properly design, manufacture, supply, install, repair,
6            replace and/or fabricate a number of stator windings or stator bars
7            and their series connections, and other parts and equipment;

8        b.    Improperly allowing gaps between the end winding groups and the
9            cooling vent duct stack;

10        c.    Failing to account for and/or consider the effects of the gaps between
11            the end winding groups and the vent duct stack;

12        d.    Violating industry standards for the evaluation and recommendations
13            for repair of the generator, stator bars and stator windings and their
14            series connections;

15        e.    Violating industry standards for the actual repair and maintenance of
16            the generator, stator bars and stator windings and their series
17            connections;

18        f.    Failing to maintain the original equipment manufacturer's standards
19            for the generator, stator bars and stator windings and their services
20            connections;

21        g.    Failing to provide proper warnings about the dangerous deficiencies
22            and propensities of the generator, stator bars and stator windings and
23            their series connections that were present as a result of the work
24            performed and equipment provided by MD&A; and

25        h.    Committing other acts or omissions which breached this contract and
26            which will be discovered during this litigation.

1    the electrical power that should have been produced but for the catastrophic failure and

2    resulting damage, for which MD&A is liable.

### FIFTH CAUSE OF ACTION

**(For Breach of Implied Warranty Against Defendants MD&A and**

**DOES 1 through 50)**

6    62.    Plaintiffs reallege the allegations of Paragraphs 1 through 61 herein as

7    Paragraph 62 of the Fifth Cause of Action.

8    63.    MD&A impliedly warranted to APS that it had the necessary experience

9    and expertise to provide the parts, equipment and services contemplated by the Master

10   Agreement, Purchase Order, and Change Notice.

11   64.    MD&A implied warranted to APS that the parts and equipment that it

12   designed, manufactured, supplied, replaced, refurbished, installed, fabricated, and/or

13   maintained were of good and sufficient quality and fit for their particular use and

14   purpose.

15   65.    APS relied upon MD&A's implied warranties but, in fact, MD&A breached

16   the warranties, so that as a sole, direct and proximate result thereof, the stator bars and

17   stator windings and their series connections and the Unit 3 generator failed on August 2,

18   2003, thereby proximately causing damage to those items and other APS property.

19   66.    As a result of MD&A's breach of its implied warranties, the Property

20   Insurance Carriers suffered damages in the amount of proceeds that they paid and will

21   pay to APS for the damaged property under their insurance policies, for which MD&A is

22   liable.

23   67.    As a result of MD&A's breach of its implied warranties, APS suffered and

24   continues to suffer at least $2,500,000 in unreimbursed property losses and damages and

25   an additional substantial amount in lost power and extra costs incurred by APS to replace

26

1   the electrical power that should have been produced but for the catastrophic failure and

2   resulting damage, for which MD&A is liable.

3                                    PRAYER FOR RELIEF

4          WHEREFORE, Plaintiffs Arizona Public Service Company and its Property

5   Insurance Carriers pray for judgment against Defendants, and each of them, as follows on

6   all causes of action:

7          1.    For general damages, jointly and severally, in an amount in excess of this

8                Court's minimum jurisdictional limits;

9          2.    For prejudgment interest from the earliest date and at the highest rate

10               allowed by law;

11         3.    For costs of suit, including attorneys' fees, incurred herein; and

12         4.    For such other and further relief as the Court deems equitable and proper.

13

14         DATED this 7th day of April 2005.

15

16                                       GAMMAGE & BURNHAM P.L.C.

17

18                                       By _Richard K. Mahrle_____
                                             Richard K. Mahrle
19                                           Two North Central Avenue, 18th Floor
                                             Phoenix, Arizona 85004
20                                           Attorneys for Plaintiffs

21
                                         -- AND --
22
                                         ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
23                                           Brent L. Reichert (MN #144630)
                                             David E. Bocan (CA #114657)
24                                           2800 La Salle Plaza
                                             800 La Salle Avenue South
25                                           Minneapolis, Minnesota 55402

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Attorneys for Plaintiffs Arizona Public Service;
Hartford Steam Boiler Inspection and Insurance
Co.; Associated Electric & Gas Insurance Services
Ltd.; Liberty Insurance Underwriters Inc.; Energy
Insurance Mutual Limited; and Underwriters at
Lloyd's of London Syndicate #1125, Subscribing
to Policy DG 218102

-- AND --

CLAUSEN MILLER P.C.
    Robert E. Wilens (IL #6204754)
    10 South La Salle Street, Suite 1600
    Chicago, Illinois 60603
    Attorneys for Plaintiff Zurich American Insurance
    Company

280620v1

19

4/7/2005

*Index No.: 07-CV-11073*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,
individually and as an assignee and subrogee of
Mechanical Dynamics & Analysis, LLC,
and LEXINGTON INSURANCE COMPANY,
individually and as an assignee and subrogee of
Mechanical Dynamics & Analysis, LLC,

Plaintiffs,

-v-

CONTINENTAL CASUALTY COMPANY
Defendants.

---

**AMENDED COMPLAINT**

---

**HODGSON RUSS LLP**
*Attorneys for Plaintiffs*
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
-and-
60 East 42nd Street, 37th Floor
New York, New York 10165

---

**PLEASE TAKE NOTICE**

<u>Notice of Entry</u>

That the within is a (certified) true copy of a duly entered in the office of the clerk of the within
named court on

<u>Notice of Settlement</u>

That an order of which the within is a true copy will be presented for settlement to the HON.
_____, one of the judges of the within named court, at
on                            , 20    at 9:30 A.M.

Dated: